## Louis Olson and James W. Miller, Appellees, v. Ingvar P. Ostby, Appellant.

### Gen. No. 16,997.

1. CORPORATIONS—*action on covenant for benefit of, must be brought by corporation.* Where defendant has sold his stock in a corporation to other stockholders and covenanted not to engage in the business of furnishing ice for water coolers in a certain district where the corporation is operating such business, the corporation alone has a substantial beneficial interest in the enforcement of the covenant, and it alone has the right to prosecute an action to enjoin its violation.

2. CONTRACTS—*for benefit of third party—action by.* Where a person for a valuable consideration makes a promise to another for the benefit of a third person, such third person may maintain an action on such promise, even where there is no consideration moving from him.

3. COVENANTS—*not to interfere with "known business"—meaning of.* Where a party covenants that he will not enter in the ice business in the cooler trade so as to interfere in any manner with the "known business" of a company, the then "known business" means the occupation of supplying ice for water coolers and is not limited to the customers of the company.

4. PARTIES—*to contract after functions terminated—not necessary to suit.* Where the functions of a party to a contract have wholly terminated and he has no rights to be affected, he is not a necessary party to a suit on the contract.

5. CONTRACTS—*coercion.* The fact that a person is led to accept $250 less than his original offer to sell an interest in his business for $3,500 does not tend to establish coercion.

6. PARTIES—*interest.* On a bill to enforce an agreement not to engage in competing business, incidental to a sale of corporate stock, a trustee who acted as intermediary or his personal representative is not a necessary party complainant when his duties have been completely executed.

Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded. Opinion filed March 13, 1913.

MUSGRAVE & LEE, for appellant.

FLANNERY & McKINLEY, for appellees.

MR. JUSTICE BAUME delivered the opinion of the court.

Prior to April 11, 1905, Louis Olson, James W. Miller and Ingvar P. Ostby, as copartners, were engaged in the sale of ice for water coolers in the down town district of Chicago, and on that day they organized a corporation, known as the Chicago Artificial Ice Company, for the prosecution of the same business. The capital stock of the corporation was $12,000 and to each of said persons, as stockholders, there was issued 40 shares of stock of the par value of $100 per share. Each of said stockholders took an active part in the conduct of the business, Miller having charge of the office, Olson having charge of the drivers, horses, wagons and stables, and Ostby soliciting the customers and making the collections. Each of the parties received a salary of $1,200 per annum and the net profits of the business were divided among the three stockholders as dividends. During the year following the incorporation of the company serious dissension arose among said stockholders regarding the arrangement for their personal services in the business of the company, and a sale by each of the stockholders of his shares of stock to the other stockholders was discussed. In April, 1906, an agreement was arrived at

for the sale by Olson of his shares of stock to Miller for $3,500, but such sale was not consummated. In July, following, Ostby offered to sell his shares of stock to Miller and Olson for the like sum of $3,500 and the negotiations following such offer resulted in an agreement by Ostby to sell his shares of stock to Olson and Miller for $3,250. At the suggestion, as the evidence tends to show, of Ostby, and with the concurrence of Miller and Olson, Albert J. Elvig, a practicing lawyer, was retained to draft the necessary instruments to effectuate the transaction. By the agreement, as executed, Elvig became the ostensible purchaser of the shares of stock owned by Ostby, but it was well known and understood that Miller and Olson were the actual purchasers of said shares. The several instruments then executed, and which embody the transaction between the parties, are as follows:

"KNOW ALL MEN BY THESE PRESENTS: This is to certify that I, Ingvar P. Ostby, of the City of Chicago, in the County of Cook, and State of Illinois, have this day sold and transferred to Albert J. Elvig of said County and State aforesaid, Forty Shares of the Capital Stock held by me, of the Chicago Artificial Ice Company, a corporation of Illinois, for the sum .of Thirty-two Hundred and Fifty ($3,250.00) Dollars, to be paid to me by said Albert J. Elvig, as follows:

"Seven Hundred and Fifty ($750.00) Dollars cash in hand, the receipt of which is hereby acknowledged, and One Thousand ($1,000.00) Dollars on the Fifteenth day of August, 1906; Five Hundred ($500.00) Dollars on the Fifteenth day of December, 1906, and Five Hundred ($500.00) Dollars on the Fifteenth day of January, 1907, which payment when completed shall be in full of all demands of kind and character both as to the purchase price of said shares of stock as mentioned aforesaid, and also to include all my interest in and to any division of profits or property right, etc., in said corporation.

"But if said Albert J. Elvig shall fail or refuse to

comply with the aforesaid conditions of payments above stated when any of the above payments shall become due, then the said Forty (40) Shares of Stock mentioned aforesaid shall be reconveyed to me and the money paid shall be forfeited to me as liquidated damages for the non-performance of the above conditions of payment as aforesaid.

"And I hereby further agree that for and in consideration of the purchase of said Forty (40) Shares of Stock and the payment therefor as above stated, I will not enter into the Ice Business for the period of Ten years in what is known as the cooler trade, either wholesale or retail, so as to interfere in any manner with the known business of the Chicago Artificial Ice Company, a corporation, in the down town district of the City of Chicago bounded by Halsted Street on the West, Chicago Avenue on the North, and Twenty-Second Street on the South, under a penalty of the laws of this State in such case made and provided.

"And I further agree that in the event of the above mentioned payments not being made at the time and in the manner specified, and a reconveyance of said Forty (40) Shares of Stock is made by said Albert J. Elvig to me, then I will cancel the balance of said payments then unpaid, and will return the note or notes held by me for the payment thereof to said Albert J. Elvig.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this 28th day of July, 1906.

(Signed) INGVAR P. OSTBY, (SEAL)

"Signed, Sealed and Delivered
in presence of
"(Signed)   E. HALVORSON."

"I, the undersigned, Albert J. Elvig, have this day purchased from Ingvar P. Ostby, Forty (40) Shares of Capital Stock of The Chicago Artificial Ice Company, a corporation, and have read the conditions of Sale made by said Ingvar P. Ostby, and I hereby agree to conform to the same and make this my agreement a part of said conditional agreement of said Ingvar P. Ostby.

"(Signed)   ALBERT J. ELVIG."

"For Value Received, I, Ingvar P. Ostby, do hereby sell, assign and transfer unto Albert J. Elvig, Forty (40) Shares of the capital stock of The Chicago Artificial Ice Company, a corporation, and do hereby irrevocably constitute and appoint James W. Miller, the Secretary of said Company, my attorney, to transfer the said Stock on the books of the within named corporation with full power of substitution in the premises.

"Dated, Chicago, July 28, 1906.

(Signed)    INGVAR P. OSTBY.

"Signed in the presence of

"(Signed)   E. HALVORSON."

"I, the undersigned, Albert J. Elvig, to whom there was transferred by Ingvar P. Ostby, Forty (40) Shares of the Capital Stock on the 28th day of July, 1906, do hereby declare that said shares were transferred by said Ostby to him in trust for L. Olson and J. W. Miller, during the fulfillment of the agreement entered into at the time of the Sale of said Stock, which agreement is for the payment thereof in installments, the last payment becoming due on the 15th day of January, 1907. Now, if said agreement is fully carried out by said Olson and J. W. Miller, and the payments made as in said agreement mentioned, then on the payment of the last installment, I hereby agree to transfer said Shares of Stock as aforesaid as said Olson and Miller shall jointly direct, I claiming no ownership therein whatever, but if the payments on any of them is not made, as agreed to, then said shares of Stock shall be transferred back to said Ostby in fulfillment of the terms of the Agreement of Sale.

"(Signed)   ALBERT J. ELVIG."

Notes were executed by Elvig, Olson and Miller, payable to Ostby for the deferred payments in the contract of sale, and upon the payment of said notes at maturity by Olson and Miller, the said 40 shares of stock were transferred, as follows: fifteen shares each to Miller and Olson and five shares each to Mrs. Miller and Mrs. Olson.

In January, 1907, following the execution of said instrument and the completed transfer of his shares

of stock in said company, Ostby went into the business of selling ice for water coolers in the down town district of Chicago, and solicited and was successful in inducing numerous individuals, firms and corporations, who then and prior thereto were customers of the Chicago Artificial Ice Co., to purchase ice for said purpose from him, and also solicited and secured the like custom of others who had not theretofore purchased ice from said company.

On June 13, 1907, Olson and Miller filed their bill of complaint against Ostby in the Superior Court, wherein, after setting forth the matters above stated and further alleging that the said acts and doings and threatened acts and doings on the part of Ostby irreparably injured the Chicago Artificial Ice Company and the complainants in their business and property, the complainants prayed that the defendant be restrained from entering into or continuing "in the ice business for the period of ten years from July 28, 1906, in what is known as the cooler trade, either wholesale or retail, so as to interfere in any manner with the known business of the Chicago Artificial Ice Company in the 'down-town district' of the City of Chicago, bounded by Halsted street on the west, Chicago Avenue on the north and Twenty-second street on the south, and for such other and further relief in the premises as equity may require and to your Honors shall seem meet."

The answer filed by defendant admits his copartnership with complainants and the subsequent incorporation of the company as alleged; alleges an attempt by Miller with the co-operation of defendant to secure the interest of Olson in the company at a very low figure, the refusal of defendant to enter into such scheme, and the consequent rage of Miller and his endeavor to stir up strife between Olson and the defendant; alleges that the remunerative business of the company was built up by his own labor and exertion; that complainants became jealous of his influence in the management of

the business and conspired together to force him out of the corporation; that complainants and Elvig represented to him that since complainants had a majority of the shares of stock they could and would use all the earnings of the company in paying salaries to themselves, and that as a result his shares of stock would become of little or no value; that defendant in his ignorance was fraudulently coerced to sell his 40 shares of stock in the company at a grossly inadequate price to Elvig; that defendant had no knowledge of the declaration of trust by Elvig in favor of the complainants and the same was no part of the contract of sale; that defendant is acquainted with the cooler trade in the downtown district and it is the only business in which he can earn a livelihood; that relying upon the representations of Elvig that the covenant by defendant in the contract not to engage in said business in said district was not intended to be enforced and could not be enforced, defendant in January, 1907, again entered into said business in said district and so conducted the same as not to interfere with the known business of the Chicago Artificial Ice Company; that the contract alleged in the bill, if the same is binding, was made for the benefit of the Chicago Artificial Ice Company and said company is a necessary and proper party complainant; that the right of action to enforce said contract, if any, belongs to Elvig and can be enforced by him alone.   Upon replications being filed to said answer the cause was referred to a master to take and report the proofs, together with his conclusions thereon.

Upon the issues of fact involved the findings of the master were wholly favorable to the complainants. The master further reported as his conclusions of law, first, that the contract in question, though in terms with Elvig, was for the benefit of complainants, and that complainants were entitled to maintain the action; second, that the covenant of defendant not to enter into the business for the period and within the district

specified in the contract was a valid and enforceable covenant; third, that by said covenant defendant was not restrained from entering into said business with others than the customers of the Chicago Artificial Ice Company, but was restrained thereby from carrying on such business so as to interfere with the known business of said company; fourth, that defendant had violated said covenant, "and should be enjoined for the period of ten years from and after the 28th day of July, 1906, from in any way soliciting customers of the Chicago Artificial Ice Company to purchase from him ice for their water coolers, and from selling ice to customers of said company, and from in any other way so carrying on his said business as to interfere with the known business of the said Chicago Artificial. Ice Company."

The objections filed to said report, both by complainants and defendant, were overruled by the master and upon the hearing by the chancellor such objections seem to have been treated as exceptions. The chancellor overruled all the exceptions and approved the master's report in so far as it related to the finding of facts, and decreed that the defendant be "restrained and enjoined from in any way, directly or indirectly, entering into or continuing in the business of furnishing ice for water coolers, either wholesale or retail, in that part of the City of Chicago, in the County of Cook and State of Illinois, which is bounded by Halsted street on the west, Chicago avenue on the north and Twenty-second street on the south, from the date of this decree until the twenty-eighth day of July, A. D. 1916; and from in any way, directly or indirectly, soliciting the customers of the Chicago Artificial Ice Company to purchase ice for water coolers in said district during said period; and from selling or otherwise furnishing ice for water coolers to customers of the Chicago Artificial Ice Company in said district during said period; and from in any way, directly or indirectly, entering into or carrying on the ice busi-

Olson et al. v. Ostby, 178 Ill. App. 165.

ness, so as to interfere with the water cooler ice busi-
ness of the Chicago Artificial Ice Company in said dis-
trict during said period.''

To reverse such decree the defendant prosecutes this
appeal.

*First.* It is insisted that the weight of the evidence
shows that the covenant in controversy was obtained
by coercion and is unconscionable, unfair and oppres-
sive.

Accepting appellant's own version of the negotia-
tions which culminated in the execution of the contract
by him, his claim that he was fraudulently coerced by
appellees to enter into the contract is wholly without
foundation. He says, ''I never asked for more than
$3,500 for my interest in the business. If I had to
sell out, I wanted at least the same amount of money
that Olson was to get, and they wouldn't give it. He
was to get $3,500 for selling it out to me and Miller.''
Appellant voluntarily fixed the price of his interest
in the business at $3,500. The mere fact that he was
finally persuaded by appellees to accept $3,250 is not
suggestive of fraudulent coercion. Upon the issues of
fact wherein the testimony of appellant is contra-
dicted by the testimony of the appellees, the findings
of the master, approved by the chancellor, must upon
this record be held to be conclusive. In arriving at
this conclusion we are influenced not alone by the
weight which is properly to be accorded to the find-
ings of the chancellor upon questions of fact, but by
a consideration of the evidence as it appears in the
record.

It is practically conceded by appellant that the terms
of the contract are such as may be enforced in law,
and we are unable to perceive wherein upon the facts
disclosed a court of equity would be justified in hold-
ing that the contract was unconscionable, unfair and
oppressive.

*Second.* It is contended that the right of action, if
any exists, for a breach by appellant of the contract

in question, is in the Chicago Artificial Ice Company and not in appellees; that a stockholder, as such, is not entitled to relief against acts injurious to his corporation, unless the corporate officers have wrongfully refused to take action, or unless the acts complained of are in violation of a contract right of the stockholder.

There is no pretense that the corporation has refused to take action, but appellees insist that, as the corporation was not in fact a party to the contract, it cannot maintain an action to enjoin a breach by appellant of its terms. As we view the matter the corporation is the only party having a substantial beneficial interest in the enforcement of the covenant here involved. The interest of appellees in the enforcement of said covenant is merely that of shareholders of the capital stock of the corporation, and is incidental and casual. Their interest is not entire, but severable, as evidenced by the fact that at the time the bill was filed, there were two other persons owning shares in the capital stock of the corporation, who were not made parties complainant. If appellees had been unsuccessful in this action and a decree had been entered dismissing the bill for want of equity, would such decree have operated to bar a similar action by the corporation? We apprehend not.

If appellant after payment therefor had refused to transfer the shares of stock purchased by them, appellees would, doubtless, be the only proper parties to enforce such transfer, but that provision of the contract is not here involved.

We conclude that the corporation alone has a substantial beneficial interest in the enforcement of the covenant here involved, and that notwithstanding the fact it is not a party to the contract, it alone may prosecute an action to enforce such covenant. In D. M. Goodwillie Co. v. Commonwealth Electric Co., 241 Ill. 42, where an action to enforce the provisions of an

agreement for an easement and to enjoin a breach of such provisions, was brought by one, not a party to such agreement, it was held that the action might be maintained, and it was said:

"It has been held in this State that where a person, for a valuable consideration, makes a promise to another for the benefit of a third person, such third person may maintain an action upon such promise; and it is not necessary in such case that there should be any consideration moving from the third person in whose favor the promise has been made. (Dean v. Walker, 107 Ill. 540; Webster v. Fleming, 178 Ill. 140; Ashelford v. Willis, 194 Ill. 492.)"

*Third.* It is urged that Albert J. Elvig, or his legal representative, is a necessary party complainant. The bill alleges and the proof shows that Elvig died shortly after the contract was completely executed by the payment to appellant by Miller and Olson of the notes and the transfer to them and their wives of the shares of stock. When this was done Elvig's function under the contract wholly terminated and he had no rights to be affected. He would not have been a necessary party if living.

*Fourth.* It is said the relief granted by the decree is broader than is warranted by the prayer of the bill and by a proper construction of the covenant.

The covenant is that appellant will not "enter into the ice business for the period of ten years in what is known as the cooler trade, either wholesale or retail, so as to interfere in any manner with the known business of the Chicago Artificial Ice Company, a corporation, in the down-town district of the City of Chicago," etc. The prayer for injunction follows the language employed in the covenant. The decree restrains appellant "from in any way, directly or indirectly, entering into or continuing in the business of furnishing ice for water coolers," etc.

It is insisted that the words "known business of the Chicago Artificial Ice Company," as used in the cove-

176    APPELLATE COURTS OF ILLINOIS.

Lakin v. South Side Elev. R. Co., 178 Ill. App. 176.

nant, should be construed to mean the "then known customers" of said ice company, and that the covenant should be construed as only prohibiting appellant from engaging in the cooler trade or business with persons then customers of the ice company.

The presumption obtains that the language employed in a contract was employed in the sense in which it is commonly understood. As defined by Webster, the word "business" means "occupation or employment," and the word "customers" is the commonly employed designation of persons who have dealings with one who is engaged in an occupation or employment. The then known occupation or employment of the ice company was supplying ice for water coolers, and it was this occupation or employment that appellant covenanted not to interfere with in any manner.

The decree is reversed and the cause remanded.

*Reversed and remanded.*