## Benjamin F. McConnell for use of Longwell Teaming & Storage Company, Appellee, v. The General Roofing Manufacturing Company, Appellant.

### Gen. No. 19,204.

1. LANDLORD AND TENANT, § 411*—*when contract by third person to pay rent is for benefit of lessor.* Where a third party entered into a contract with a lessee of certain premises to make the latter the former's selling agent and agreed therein to assume the payment of all rents provided in the lease, *held* that the promise of such third party to pay the rent was for the benefit of the lessor, though payment of the rent was not the primary object of the contract.

2. LANDLORD AND TENANT, § 408*—*what constitutes assignment of lease with consent of lessor.* Where a third party under a contract

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

with the lessee took possession of the demised premises and paid rent to the lessor, who accepted the rent with full knowledge of the facts, *held* that the facts constituted an assignment of the lease with consent of the lessor.

3. LANDLORD AND TENANT, § 412*—*when contract by assignee of lease to pay rent is for whole term.* A contract between a lessee and a third party whereby the latter agreed to assume payment of the rents provided by the lease, *held* to constitute an agreement to pay the rent for the whole term.

4. LANDLORD AND TENANT, § 404*—*effect of provision in lease requiring lessor's consent to assignment.* A clause in a lease providing for a written consent of the lessor to an assignment of the lease is for the benefit of the lessor only.

5. LANDLORD AND TENANT, § 416*—*when third party agreeing with lessee to pay rents not relieved of liability by assignment of lease to another.* Where a third party under a contract with a lessee of certain premises assumed payment of the rent and paid rent to the lessor who accepted the same and such third party thereafter assigned the lease to another, *held* that such party's assignment did not terminate its liability on its contract with the lessee to pay the rent thereafter accruing.

Appeal from the Municipal Court of Chicago; the Hon. ARNOLD HEAP, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Affirmed. Opinion filed May 21, 1914. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** This is an appeal from a judgment for $2,000 entered in the Municipal Court after a jury trial, upon a directed verdict for the plaintiff.

It appears from the evidence that on September 26, 1907, Benjamin F. McConnell, as lessor, executed a written lease of certain premises in Chicago to James C. Woodley & Co., an Illinois corporation (hereinafter referred to as Woodley & Co.), running for seven years, at a term rental of $19,374.93, payable in monthly instalments of $208.33 for the first twenty-one months and $250 a month for the remainder of the term. The lease contained the usual covenant that the lessee should not sublet the premises nor assign the lease without the written consent of the lessor. Under this lease, Woodley & Co. occupied the premises and paid the monthly instalments of rent as they accrued until October 1, 1908.

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

On September 26, 1908, a written contract was entered into between appellant and Woodley & Co., in which, after reciting that appellant is engaged in the manufacture and sale of roofing and building materials, and Woodley & Co. is engaged in the sale of that kind of materials, and has an established office and warehouse in Chicago "and a lease thereon expiring May 1, 1914," and the equipment and facilities for selling such goods, as well as an extensive trade therein, and after reciting further that appellant intends to establish a branch office and warehouse in Chicago and desires to avail itself of the "services, equipment, capital and net assets and other facilities" of Woodley & Co. "as its selling agent," it was agreed that appellant should establish in Chicago, "and maintain there during this contract," a branch office and warehouse, under the management of Woodley & Co., as appellant's agent, such branch office to be known as "General Roofing Manufacturing Company, James C. Woodley & Co. Branch;" that Woodley & Co. should "close out its present stock of metal goods" of a character different from those of appellant and devote its best energies, efforts, facilities and capital to the work of selling appellant's goods exclusively, and for that purpose Woodley & Co., as the agent of appellant and as the manager of said branch, should have the sole and exclusive right "during this contract" to handle and manage the sale of appellant's goods in Wisconsin, Michigan and certain counties in Illinois, Indiana and Ohio; that appellant should keep on hand and carry in stock at its Chicago branch such amounts and grades of its goods and products as in its (appellant's) judgment would meet the reasonable business requirements "of the less than carload trade to be supplied by shipments to customers direct from Chicago," all carload purchases to be shipped direct from appellant's factory; that Woodley & Co. should have no title to any of such merchandise and no interest therein except as agent of appellant, and should not

be liable for any losses (except such as might occur through its negligence) in connection with the handling, storage or sales of such goods, or the collection, custody or transmission of the proceeds; that appellant "shall be liable for and shall pay all proper and legitimate expenses and obligations arising out of or in the conduct of the business under this contract, and from the operation and maintenance of the James C. Woodley & Co. Branch, as aforesaid, including among other things, advertising, rent, taxes, insurance, salaries, wages, commissions, traveling expenses, office and warehouse expenses, freight charges, cortage, and other reasonable and proper disbursements of all kinds, and shall pay the salary of the president of James C. Woodley & Co.;" that Woodley & Co., as the agent of appellant and in its name and behalf, "is hereby authorized and empowered to incur all such reasonable and legitimate expenses and obligations for the conduct of the business under this contract," it being understood that appellant "will always keep and maintain in Chicago for use by said James C. Woodley, & Co. Branch, sufficient funds to meet promptly, as and when they are payable, the legitimate expenses and obligations arising from the conduct of the business under this contract;" that "the lease on said premises now occupied by the second party in the City of Chicago, and any and all extensions or renewals thereof, shall during this contract, be held for the use and benefit of the first party (appellant) and to that end the second party will, whenever requested by the first party, assign or cause to be assigned to the first party, its entire interest in said leasehold;" and that said contract should take effect as of September 1, 1908, and run for twenty years.

It further appears that soon after this contract was made, a large sign with appellant's name on it was placed upon the premises described in the lease; that about the same time, Woodley informed the lessor that

appellant had taken over the lease and would continue the business and pay the rent, to which the lessor made no objection; that from October 1, 1908, until March 30, 1911, appellant paid to the lessor the monthly instalments of rent accruing under the lease, and said payments were accepted by the lessor; that appellant occupied the premises described in the lease and conducted its business in the manner specified in the contract, from the date of the contract until about August 1, 1910, when it vacated the premises; that after vacating the premises appellant wrote a letter to the lessor, inclosing a check for the August, 1910, instalment of rent, and starting that "we have now vacated this property entirely and it is a dead loss on our hands, and anything you can do toward helping getting a tenant for same will be appreciated;" that for several months thereafter, appellant endeavored in various ways, without success, to secure a tenant for the premises; and that on March 30, 1911, without the knowledge or consent of the lessor, appellant executed a formal assignment of all its right, title and interest in the lease and premises in question to one Albert C. Miller, who was employed by appellant around its office, and whose other duties were described by appellant's president as follows: "He waits during the noon hour."

Meantime, on May 13, 1910, a second contract had been entered into between appellant and Woodley & Co. This second contract recites that the parties had agreed that the contract of September 26, 1908, "should be cancelled, annulled and abrogated as of the first day of January, 1910," and that an adjustment of· all claims of either party against the other had been agreed on, which included the following provision: "The second party (Woodley & Co.) has assigned, and does hereby assign, to the first party (appellant) its lease, and all renewals and extensions thereof and rights thereunder, on the premises heretofore occupied by the second party in the City of Chicago, being the

104    APPELLATE COURTS OF ILLINOIS.

McConnell v. The General Roofing Mfg. Co., 187 Ill. App. 99.

same premises as those recently occupied pursuant to said contract; and the second party further covenants that, at any time on demand, it will execute and deliver to the first party such further or formal assignments or transfers of said lease, and renewals and extensions thereof and any rights thereunder, as may be desired by the first party; the first party hereby covenanting that upon the second party securing any consent to the assignment of said lease that may be necessary under the terms of said lease, it will assume the payment of all rents provided for in said lease, and will assume the faithful performance of all covenants imposed therein on the second party." This contract also stated that Woodley & Co. had sold and transferred to appellant all of the office furniture, fixtures and equipment contained in the premises in question and the right to use all labels, trade-marks, brands and trade names theretofore used by Woodley & Co.; that Woodley & Co. had agreed not to engage in the same business for a period of five years within the States in which appellant is doing business; that appellant had paid to Woodley & Co. a certain sum of money and certain shares of its capital stock in full settlement of all demands; and concludes that "as a result of the foregoing," the contract of September 26, 1908, and the selling agency constituted thereby, is cancelled and terminated as of January 1, 1910.

Appellant refused to pay rent after March 30, 1911 (the date of its assignment of the lease to Miller), and appellee brought suit to recover the monthly instalments of rent due for the period beginning April 1, 1911, and ending November 30, 1911. At the close of all of the evidence each of the parties moved the court for a peremptory instruction in its favor. The motion of appellant was denied and the motion of appellee was granted, whereupon the court instructed the jury to find the issues for the plaintiff.

Adams, Follansbee, Hawley & Shorey, for appellant; Mitchell D. Follansbee and Clyde E. Shorey, of counsel.

Winston, Payne, Strawn & Shaw, for appellee; Edward W. Everett and George A. Kelly, of counsel.

Mr. Presiding Justice Fitch delivered the opinion of the court.

In this case there is no controversy as to the essential and material facts. The sole question is whether the uncontradicted and admitted facts are such as to warrant the trial court in directing a verdict in favor of appellee and against appellant. The principle upon which appellee rests his right to recover is that stated in *Dean v. Walker,* 107 Ill. 540, 545, as follows: "It is a familiar rule, and one well sustained by authority, that where one person, for a valuable consideration, makes a promise to another for the benefit of a third person, such third person may maintain an action upon it." This doctrine has been recognized and approved in the later cases of *Bay v. Williams,* 112 Ill. 91; *Webster v. Fleming,* 178 Ill. 140; *Harts v. Emery,* 184 Ill. 560; *Hartman v. Pistorius,* 248 Ill. 568, and in many other cases. Upon this principle, appellee contends that by the express terms of the contracts between appellant and Woodley & Co., coupled with the assent or acquiescence of appellee as lessor of the premises described in the lease, appellant became the tenant of appellee and liable for the rent of the premises for the full term of the lease.

Appellant insists (1) that neither of the contracts in evidence contains any express promise to pay rent for the whole term of the lease; (2) that even if such a promise was made, it was made for the benefit of the parties to the contracts, and not for the benefit of appellee, and that the rule above stated is subject to the qualification that in order to enable a third person to recover upon such a promise it must appear that the

106    APPELLATE COURTS OF ILLINOIS.

McConnell v. The General Roofing Mfg. Co., 187 Ill. App. 99.

promise was made directly and primarily for the benefit of such third person; (3) that in any event, the contracts were purely executory and the rule invoked by appellee has no application to promises contained in contracts of that character; and (4) that appellant's liability ceased when it assigned the lease to Miller.

FIRST. The contract of September 26, 1908, states that Woodley & Co. "has an established office and warehouse" upon the premises in question, "and a lease thereon expiring May 1, 1914," and has the equipment and facilities for handling appellant's goods as well as an extensive trade therein; that appellant desires to avail itself of all these facilities by making the office and warehouse of Woodley & Co. its branch office and warehouse, and making Woodley & Co. its agent in charge thereof; that the lease on such branch office and warehouse "shall be held for the use and benefit" of appellant; that "the entire interest" of Woodley & Co. therein shall be assigned to appellant whenever requested by it; and that appellant "shall be liable for and shall pay all proper and legitimate expenses and obligations arising * * * from the operation and maintenance of the James C. Woodley & Co. Branch, as aforesaid, including * * * rent." Under this contract, appellant took possession of the premises described in the lease thus referred to, maintained its branch office and warehouse therein, and for over two years thereafter paid to the lessor the rent stipulated in the lease, all with the full knowledge and consent of such lessor. These facts alone, in our opinion, constituted an assignment of the lease to appellant with the consent of the landlord, and also an agreement on the part of appellant to pay to appellee the rent therein reserved for and during the whole term thereby demised. All question upon this point is removed, however, by the provisions of the contract of May 13, 1910; for, while that contract cancels the agency of Woodley & Co., yet by its express terms, as quoted in the statement of facts preceding this opinion, it recognizes and

continues in force the obligation of appellant to pay the rent accruing thereafter under the terms of the lease. It is claimed by appellant's counsel that the language in the contract of May 13, 1910, wherein appellant expressly agreed to "assume the payment of all rents provided for in said lease," was conditioned upon the securing by Woodley & Co. of the landlord's written consent. The language used is: "The first party (appellant) hereby covenanting that upon the second party (Woodley & Co.) securing any consent to the assignment of such lease that may be necessary under the terms of such lease, it will assume," etc. This language does not require a *written* consent to the assignment of the lease to be secured. It merely stipulates that "*any consent that may be necessary under the terms of the lease*" shall be secured. No written consent was necessary at that time under the terms of the lease, for the reason that the lessor had already assented to the assignment by accepting rent from appellant with knowledge of the facts. The clause in the lease providing for a written consent of the lessor to an assignment of the lease was for the benefit of the lessor only, and was waived by him long before the second contract was made. After such waiver, it ceased to exist as one of the terms of the lease, at least so far as the assignment to appellant was concerned. *Webster v. Nichols,* 104 Ill. 160; *Willoughby v. Lawrence,* 116 Ill. 11.

SECOND. The argument that the contracts of September 26, 1908, and May 13, 1910, were not made *primarily* for the benefit of appellee, and that for this reason no action can be maintained by appellee upon the promise to pay rent therein contained, while it is ingenious, is unsound, in our opinion. It is true that the principal purpose or main object of these contracts was not merely the payment of rent to appellee. It is equally true, however, that the principal or primary purpose of a warranty deed, containing a clause to the effect that the grantee assumes and agrees to pay

108    APPELLATE COURTS OF ILLINOIS.

McConnell v. The General Roofing Mfg. Co., 187 Ill. App. 99.

a mortgage upon the premises conveyed, is not merely the payment of the incumbrance. The primary object of the deed in such case is the conveyance of the legal title to the property, but the promise to pay the mortgage is nevertheless always considered as a promise for the benefit of the mortgagee. *Webster v. Fleming, supra.* So, in this case, the primary object of the contracts between appellant and Woodley & Co. was to establish and maintain a branch office for appellant in charge of Woodley & Co. as appellant's agent, upon the premises described in the lease; but the promise of appellant to pay the rent was quite as directly and primarily for appellee's benefit as the promise to pay the incumbrance was for the benefit of the mortgagee in the cases above cited.

THIRD. When Woodley & Co. delivered possession of the leased premises to appellant under the contracts in evidence and appellee accepted appellant as his tenant, appellant had received the consideration for its promise to pay rent to appellee. The contract of Woodley & Co. was then fully performed on its part, so far as its interest in the demised premises was concerned. A distinction is sought to be made by appellant's counsel from the fact that the phrase "during the life of this contract" is frequently used in the contract of September 26, 1908. It is said that this phrase tends to show that appellant's promise to pay rent was obligatory only while that contract was in force, and that in fact the contract of September 26, 1908, was cancelled by that of May 13, 1910. We do not think the first contract is fairly susceptible of the interpretation thus claimed. But even if it were, the situation of appellant would not be improved, for the reason already stated, viz.: that although the later contract cancels the first one so far as the agency of Woodley & Co. is concerned, nevertheless, by its express terms, the contract of May 13, 1910 recognizes and continues in full force and effect the liability of appellant to pay rent under the lease for the remain-

der of the term, as one of the matters which were considered and provided for in the settlement agreed upon at that time.

FOURTH. As to the claim that appellant's liability ceased when it made an assignment of the lease to Miller, we think it is clear that while that assignment may have had the effect of terminating the privity of estate then existing between appellant and appellee, it certainly could not have the effect of terminating appellant's liability under the express contracts with Woodley & Co. to pay the rent accruing thereafter. *Springer v. DeWolf,* 194 Ill. 218, 224.

For the reasons stated, we think there was no error in giving the peremptory instruction, and the judgment of the Municipal Court will be affirmed.

*Affirmed.*