Carson Pirie Scott & Company, Appellant, v. W. J. Parrett et al., Executors of the Last Will and Testament of John H. Harrison, Deceased, Appellees.

Gen. No. 8,474.

Opinion filed January 26, 1931. Rehearing denied April 7, 1931.

WHITMAN, MILLER & COON and GREEN & PALMER, for appellant; HENRY G. MILLER, WILLIAM G. PALMER and ORIS BARTH, of counsel.

ACTON, ACTON & SNYDER and GUNN, PENWELL & LINDLEY, for appellees; WILLIAM M. ACTON and WALTER T. GUNN, of counsel.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

This case presents the question as to whether or not Carson Pirie Scott & Company, appellant, as one of the parties to be benefited thereby, may maintain

a suit against the appellees as executors under the will of John H. Harrison, deceased, on a certain contract, dated November 24, 1926, made by John H. Harrison as one of the parties of the first part, and Caldwell & Company, a Tennessee corporation, as party of the second part.

Appellant brought suit in assumpsit on December 30, 1927, in the circuit court of Vermilion county against John H. Harrison and M. J. Wolford for the sum of $5,000, and on April 30, 1928, filed its declaration in the case.

At the May, 1928, term of said circuit court, Harrison and Wolford filed their general demurrer to the declaration and to each count thereof. Subsequently, the defendant Wolford died, and on December 27, 1929, suggestion of his death was made and an order entered that the cause proceed against the surviving defendant, Harrison. Thereafter the surviving defendant, John H. Harrison, died, and on July 5, 1930, an order of court was entered substituting W. J. Parrett, Roy O. West and George T. Buckingham, executors of the last will and testament of John H. Harrison, deceased, as parties defendant. Such substitution being made, appellant was given leave to amend the first and third counts of the declaration and was also given leave to withdraw the second count of the declaration. Upon the withdrawal of the second count and the filing of the amendments to the first and third counts of the declaration, the defendants—appellees—as executors, entered their appearance as defendants and an order was entered that the demurrer originally filed stand as the demurrer of defendants as executors to the first and third counts of the declaration as amended. By order entered on July 5, 1930, the demurrer to the amended first and third counts of the declaration as amended was sustained. The appellant elected to stand by its declara-

tion as amended, the court entered judgment in bar of action and for costs and thereupon the appellant prayed and was allowed an appeal to this court.

The allegations contained in the first count of the declaration and in the amendment to that count were in substance as follows:

On November 24, 1925, the appellees' testator, John H. Harrison, one of the original defendants, was the president of, and the other original defendant, M. J. Wolford, was the treasurer of, the Danville Hotel Company, an Illinois corporation, which was organized for the purpose of and was then engaged in the construction and furnishing of a hotel building in the City of Danville, known as the Hotel Wolford. The hotel company, in order to secure moneys and funds with which to pay for the construction of the hotel building, had issued its bonds in the sum of $700,000 and under date of February 13, 1926, entered into an agreement with Caldwell & Company, a Tennessee corporation, to underwrite and dispose of said bonds in order that the hotel company might receive the proceeds of the bonds for use in constructing the hotel. In order to secure the payment of its $700,000 in bonds, the hotel company had executed and delivered its certain real estate mortgage or deed of trust covering and conveying the hotel building and the premises on which it was situated, and also its chattel mortgage covering and conveying the furniture, furnishings and all other chattels located and to be located in the hotel building, except chattels held for sale or consumable in their use, to Liberty Central Trust Company and one Miller, as trustees. In the real estate mortgage or deed of trust, the hotel company covenanted and agreed that it would promptly furnish all moneys necessary in addition to and prior to the use of the proceeds of said bond obligations to complete and furnish said Hotel Wolford and to have the same promptly completed and furnished.

On November 24, 1926, the hotel company, not having on hand or in its possession moneys and funds sufficient to furnish the hotel in accordance with the requirements of the real estate mortgage or deed of trust, Caldwell & Company, which was under the underwriting agreement custodian of the proceeds of the bonds and at that time held in its custody certain of such proceeds, refused to make any further disbursements of the proceeds of said bond obligations unless and until the hotel company had in its hand sufficient moneys to furnish said hotel building, or unless and until assurances should be given to Caldwell & Company that the furniture, furnishings and equipment for the hotel would be installed free of liens and incumbrances. Thereupon on November 24, 1926, by reason of the premises, and for a good and valuable consideration, Wolford and Harrison, as parties of the first part, entered into an agreement with Caldwell & Company as party of the second part, bearing that date, this agreement being set forth in full in the first count of the declaration. It is recited in this agreement that Harrison is the president and Wolford the treasurer of and interested in the hotel company, and recitals as to the making of the underwriting agreement and of the execution of the mortgage or deed of trust and the chattel mortgage are contained therein. The agreement further recites that the mortgage or deed of trust given to secure the bonds contained the following provision:

"Said owner further covenants and agrees that it will promptly furnish all moneys necessary, in addition to, and prior to, the use of the proceeds of this bond issue, to complete and furnish the Wolford Hotel, now being erected on said property, in accordance with the plans and specifications heretofore made by Hall, Lawrence, Rippel & Ratcliffe, architects, and that it will have same promptly completed and furnished,

without interruption or delay in the work, and immediately upon completion, that it will commence, or have commenced, the operation of said Hotel.''

The agreement further recited that the hotel company had on hand moneys estimated as sufficient, in addition to the proceeds of the bonds, to complete the hotel building, but did not have on hand moneys sufficient to furnish the hotel, and recited also that the underwriter, Caldwell & Company, was custodian of the proceeds of the bond issue and had been advised not to make further disbursements of the proceeds of said bonds until the hotel company had on hand sufficient moneys to furnish the hotel building or assurance was given that the furnishings would be installed free of liens. The acquiescence of Wolford and Harrison in the position taken by Caldwell & Company is recited in the agreement, in which they promised, covenanted and agreed as follows:

''1. That the parties of the first part do hereby guarantee the installation in the Wolford Hotel at Danville, Illinois, on or before December 15, 1926, by Arthur A. Marer & Company of Chicago, Illinois, of the furniture, of the price and value of $115,000.00, mentioned in contract of date October 9th, 1926, and exhibit thereto, between the said Arthur A. Marer & Company, which written contract and exhibit are hereby referred to and made a part hereof, agreeing, if the Hotel Company does not promptly pay, to pay for said Hotel Company all of the payments therein required to be made before installation is completed, when said payments are due.

''2. That the parties of the first part will also have installed on or before December 15, 1926, in the Wolford Hotel, free of lien and subject to the lien of the chattel mortgage of the Liberty Central Trust Company and Miller, Trustees under the mortgage securing the aforesaid bond issue, the following char-

acter of furniture or equipment by the following parties, or by other parties satisfactory to the party of the second part and in approximately the following amounts:

| | |
|---|---:|
| China—Arthur Schiller & Sons, 50 per cent cash, balance six months | $ 3007.90 |
| Silver—Rogers Bros., International Silver Company | 2488.79 |
| Kitchen Equipment—Wm. F. Traub Range Company | 15680.69 |
| Waste Baskets—Marshall Field Company | 180.00 |
| Linens—Carson Pirie Scott Company—Marshall Field Company | 6763.25 |
| Refrigerators—Dry-Kold Refrigerator Company | 5800.00 |
| Portrait—Arvid Nyholm | 1500.00 |
| Drapes—Albert Pick | 10000.00 |
| Shades—National Window Shade Company | 500.00 |
| Kitchen Utensils—Wm. F. Traub Range Company | 2000.00 |
| Additional Kitchen Utensils & Supplies | 1000.00 |
| Office Equipment, Front Office Equipment and Miscellaneous Supplies | 6080.00 |
| Total | $55000.00 |

"The parties of the first part will promptly pay for the above characters of furnishings and equipment when payments are due, if the Hotel Company does not do so, so that the installation of same promptly and free of lien is assured."

The first count further alleged that by and under the terms and provisions of the agreement of November 24, 1926, Wolford and Harrison promised and agreed that they would have installed in the Hotel Wolford furniture, furnishings and equipment for said hotel building so that the same would be subject to the lien of the chattel mortgage and particularly promised

and agreed that they would have installed in said hotel by the appellant and by Marshall Field & Company, or by other parties satisfactory to Caldwell & Company, furnishings and equipment as follows: By the appellant and Marshall Field & Company, or either of them,—Linen goods or linens in approximately the amount of $6,763.25, and in said agreement Wolford and Harrison promised and agreed that they would promptly pay for the furnishings and equipment so to be installed when the payment therefor became due, if the hotel company did not pay therefor.

It is further alleged that at the request of the hotel company, the appellant furnished, sold and delivered to it for installation in the hotel, sheets, towels, toweling, napkins, table tops, table cloths, mattress pads, pillow cases, bath mats, table pads, etc., all commonly known and designated as "linens" in the amount of and at the purchase price of $3,266.20, and Marshall Field & Company furnished, sold and delivered to the hotel company for installation in the hotel building, linens to the amount of and at the purchase price of $3,121, and all of the articles so furnished, sold and delivered by the appellant were installed in the hotel building and accepted by the hotel company on the 15th day of December, 1926, the terms of the sale being 30 days net, and payment for the same became due on the 15th day of January, 1927.

The first count further alleges that the Danville Hotel Company did not pay to the appellant nor to anyone for it, the amount of the purchase price of the linens so furnished, sold and delivered by appellant to the hotel company, or any part thereof, and by reason thereof Harrison and Wolford on January 15, 1927, became obligated and liable to pay the appellant the amount of the purchase price for the linens so furnished, sold and delivered by it according to the tenor and effect of the written agreement dated

November 24, 1926, entered into by them with Caldwell & Company and for interest on that amount from the time payment became due.

It is further alleged in the amendment to the first count of the declaration that since the commencement of the suit and the filing of the original declaration, M. J. Wolford, one of the original defendants, died, and that the cause was ordered to proceed against the surviving defendant, John H. Harrison, and that thereafter John H. Harrison departed this life testate and that his last will and testament was duly admitted to probate in the probate court of Vermilion county, and that W. J. Parrett, Roy O. West and George T. Buckingham qualified as executors of said will and letters testamentary were issued to them, and upon the death of John H. Harrison being suggested to the court, the executors of his last will and testament were substituted as defendants, and that upon the death of Wolford, Harrison became obligated and liable to pay to appellant the amount of the purchase price of the articles furnished, sold and delivered by appellant to the hotel company according to the tenor and effect of the written agreement of November 24, 1926, entered into by Wolford and Harrison and Caldwell & Company, and for interest on that amount from the time payment became due; and that upon the death of Harrison, the appellees, as executors of his last will and testament, became obligated and liable to make the payment out of the assets of the estate of said Harrison, and although the time for payment of the purchase price for the articles sold by appellant has long since elapsed before the bringing of this suit, neither Wolford nor Harrison, nor either of them, paid to the appellant the amount of the purchase price or any part thereof, but refused so to do, and since the bringing of this suit neither Wolford nor Harrison, nor W. J. Parrett, Roy O. West or George T. Buck-

ingham, executors, nor any or either of them, have paid to the appellant the amount of the purchase price or any part thereof, all to the damage of the appellant in the sum of five thousand dollars.

The allegations contained in the third count of the declaration and in the amendment to that count are in substance the same as the allegations contained in the first count of the declaration and in the amendment thereto, the only difference between the two counts being that the order of pleading is somewhat different.

Appellant's contention is that the promise made by Harrison and Wolford, in their contract with Caldwell & Company, to have installed in the hotel the furniture and equipment specified in the contract, and to pay for the same, was, within the authorities, a promise made for the benefit of the other parties furnishing the furniture and equipment, and hence the appellant is entitled to bring suit thereon; and that the court erred in holding to the contrary.

In this case counsel for appellant have divided their argument into seven divisions, under which they insist on the following propositions:

1. That a third person may bring an action for a breach of a contract made by another for the benefit of such third person.

2. That it is not necessary that the third party should have furnished any consideration to the promisor.

3. That it is not necessary that the promisee shall have been himself obligated to the third party.

4. The third party need not have been specifically named in the contract to entitle him to recover.

5. The third party need not have known of the making of the contract in order to recover.

6. The contract need not have been accepted or assented to by the third party before bringing the suit.

7. That a beneficial interest in the enforcement of the contract is sufficient to give the third party the right to sue thereon.

Appellees state that they are making no contention against the legal premises of appellant in the second, third, fourth, fifth and sixth propositions, as above stated. They do dissent from the seventh proposition above asserted, and aver that the first proposition is true only to a limited extent, and applies only where the contracting parties intended a benefit to a third person. Appellees insist that the fact that one not a party or privy to a contract is incidentally benefited under it, is not sufficient for declaring that the contract was made and intended for his benefit. And the question whether a contract was so intended is one of construction.

Little light would be thrown upon this controversy by an attempt to analyze the numerous cases that have been cited, many of which have a contrary state of facts and none of which are exactly identical. The case is to be decided upon general principles applicable to the language used in the contract and considering the position of the parties and the ends they had in view. Appellees have cited the statement of the rule on this subject, found in the article on contracts in 6 R. C. L. sec. 274, page 886, where, in discussing the right of a third person to sue on a contract, it is said:

"Under the rule that a beneficiary may enforce a contract, the contract must have been intended for the benefit of a third person. It is not sufficient that the performance of the covenant may benefit a third person. It must have been entered into for his benefit, or at least such benefit must be the direct result of performance and so within the contemplation of the parties. The fact that one not a party or privy to a contract is incidentally benefited under it, is no

reason for declaring that the contract was made and intended for his benefit. A contract between two persons cannot be held to be for the benefit of a third from the mere fact that its breach or negligence in discharging the duties undertaken by it, has resulted in injury to such third person. . . . Ordinarily it is sufficient if the contract is evidently made for the benefit of a third person. The question whether the contract was so intended is one of construction. That intention must be gathered, just as in the case of any other contract, from reading the contract, as a whole, in the light of the circumstances under which it was entered into. But it has been observed that, inasmuch as people usually stipulate for themselves, and not for third persons, a strong presumption obtains in any given case that such was their intention; and that the implication to overcome that presumption must be so strong as to amount practically to an express declaration.'' Likely neither party would object in this case to being measured by this rule. It is of much assistance that both parties subscribe to the second, third, fourth, fifth and sixth legal propositions stated by appellant. We repeat certain rules set out in 6 R. C. L. *supra:* ''It must have been entered into for his benefit, or at least such benefit must be the direct result of performance and so within the contemplation of the parties.'' And again, ''Ordinarily it is sufficient if the contract is evidently made for the benefit of a third person.''

The point under consideration was passed on in the case of *McConnell v. General Roofing Mfg. Co.,* 187 Ill. App. 99, and the holding there is accurately digested in the syllabus as follows: ''1. Landlord and Tenant, § 411—*when contract by third person to pay rent is for benefit of lessor.* Where a third party entered into a contract with a lessee of certain premises to make the latter the former's selling agent and agreed therein to assume the payment of all rents

provided in the lease, held that the promise of such third party to pay the rent was for the benefit of the lessor, though payment of the rent was not the primary object of the contract."

It was contended in that case that the promise was made for the benefit of the parties to the contract and that the rule that a third party may sue on a contract made for his benefit is subject to the qualification that it must appear that the promise was made directly and primarily for the benefit of the third person. The Appellate Court of the First District in answering this contention said (p. 107):

"Second. The argument that the contracts of September 26, 1908, and May 13, 1910, were not made primarily for the benefit of appellee, and that for this reason no action can be maintained by appellee upon the promise to pay rent therein contained, while it is ingenious, is unsound, in our opinion. It is true that the principal purpose or main object of these contracts was not merely the payment of rent to appellee. It is equally true, however, that the principal or primary purpose of a warranty deed, containing a clause to the effect that the grantee assumes and agrees to pay a mortgage upon the premises conveyed, is not merely the payment of the incumbrance. The primary object of the deed in such case is the conveyance of the legal title to the property, but the promise to pay the mortgage is nevertheless always considered as a promise for the benefit of the mortgagee. *Webster v. Fleming, supra.* So, in this case, the primary object of the contracts between appellant and Woodley & Co. was to establish and maintain a branch office for appellant in charge of Woodley & Co. as appellant's agent, upon the premises described in the leases; but the promise of appellant to pay the rent was quite as directly and primarily for appellee's benefit as the promise to pay the incumbrance was for the benefit of the mortgagee in the cases above cited."

This is in accord with the rule laid down in the earlier cases. In *Brown v. Strait,* 19 Ill. 88, the court held: "One Collins owed the plaintiff below (William Brown), forty dollars. Collins sold the defendants a mill, for which they paid him some money, and verbally promised to pay his debt to the plaintiff, but which, on demand of plaintiff, they refused to do. The court, on this state of fact, rendered judgment against the plaintiff for costs. The case of *Eddy v. Roberts,* 17 Ill. 505, decides the question here. In that case, the court say: 'Where one enters into a simple contract for the benefit of a third, such third person may maintain an action for breach, and such contract is not within the statute of frauds.'" The judgment was reversed and the cause remanded.

In another early case, *Bristow v. Lane,* 21 Ill. 194, the third party was held to have a cause of action even though not named in the contract. In that case Bristow and one Newman entered into an agreement with one Clampit, as follows:

" 'We hereby agree and bind myself to compromise with the creditors of Mr. Clampit, in Philadelphia and New York, lift the notes held against him in the said cities, contracted in the Spring of 1856; *provided,* in the compromise I can make such arrangements as not to sustain any loss by Mrs. Clampit withholding her signature from a deed to their house and lot in Jacksonville.

(Signed) B. F. Bristow.<br>B. Newman.'

" 'The above obligation is in consideration of a house and lot deeded to me by Mr. Clampit, this March 22nd, 1857.

B. F. Bristow,<br>B. Newman.'"

A creditor of Clampit brought suit on the agreement and the trial court overruled a demurrer to the

declaration. On appeal, the decision of the trial court was affirmed by the Supreme Court and in its opinion the court holds (p. 198):

"In the case before us, real estate was conveyed by the debtor of the plaintiffs to the defendants, on their written undertaking to compromise with his creditors in Philadelphia and New York, and take up the notes held against him in those cities, for debts contracted in the spring of 1856. Now though the plaintiffs are not named in this undertaking, all that is necessary for them to show is, that this debt for which they sue, or this note, was given by their debtor who made the arrangement with the appellants, either in New York or Philadelphia, in the spring of 1856. The creditors affirm this act of their debtor for their benefit, by bringing this suit."

In *Merchants Loan & Trust Co. v. Ummach,* 228 Ill. App. 67, the court held on page 80: "We are of the opinion that the plaintiff, Merchants Loan and Trust Company, the third party in the case at bar, is entitled to recover against the defendant Ummach, the promisor, that recovery being based on the contract the latter made with Edwards, the promisee, wherein the defendant assumed the payment of the Schaaf notes and promised to pay them. Where one makes a contract with another, for the benefit of a third person, the latter, though not a party to the contract, may maintain an action upon it against the promisor. The contract need not have been accepted or assented to by the third party. It does not involve an indemnity, but the promise is deemed to invest the person for whose benefit it is made with an immediate interest and right as though the promise had been made to him. To enable the third party to maintain an action on the contract, it is not necessary that any consideration shall have moved from the third party to the promisor. The consideration moving from the prom-

isee is sufficient on which to base the liability of the promisor to the third party. In such an action the question of the liability of the promisee to the third party is immaterial, as the liability of the promisor does not depend upon the liability of the promisee to the third party. The promisee need not have been indebted to the third party, nor is it necessary that the obligation undertaken by the promisor shall relieve the promisee of any legal liability. It is not necessary, to enable the third party to sue the promisor, that the obligation shall have been undertaken by the latter directly or primarily for the benefit of the third person. The liability of the promisor to the third party in an action brought by the latter against the former depends merely upon the question of whether the third party has a beneficial interest in the enforcement of the contract. *Dean v. Walker,* 107 Ill. 540; *Webster v. Fleming,* 178 Ill. 140; *Olson v. Ostby,* 178 Ill. App. 165; *Torpe v. Jahn,* 177 Ill. App. 85; *Easter v. Newbury,* 170 Ill. App. 494; *Lawrence v. Oglesby,* 178 Ill. 122; *Dallum v. Birdsall,* 66 Ill. 378; *McConnell v. General Roofing Mfg. Co.,* 187 Ill. App. 99; *Harts v. Emery,* 184 Ill. 564." In this case the Supreme Court denied a petition for certiorari.

But appellees contend that none of the cases cited by the appellant conflict with the rule of law for which they contend; that there is no conflict between the authorities cited by appellant and those relied upon by appellee; that it is true that in *Merchants Loan & Trust Co. v. Ummach,* 228 Ill. App. 67, it is stated that it is not necessary that the obligation shall have been undertaken directly or primarily for the benefit of the third person, but by that expression evidently the court meant that the motive need not be to benefit the third person.

It is further contended by appellees that other statements in the *Ummach* case clearly show that the court recognized that there must have been a contractual

intent between the contracting parties that money be paid to the third party.

The position of the parties on November 24, 1926, when the contract was made, was that the hotel company had given mortgages and trust deeds to secure a bond issue for $700,000 and out of the proceeds thereof had agreed to construct the building and equip the same with furniture and furnishings sufficient to run the hotel and place it upon an income paying basis. The building and the entire furnishings (though not yet purchased) had been conveyed to Caldwell & Company to secure the $700,000 bond issue. Caldwell & Company already had a chattel mortgage on appellant's linens, which had not yet been purchased or placed in the hotel. At this time the hotel company had on hand moneys sufficient to complete the hotel, in addition to the proceeds of the bonds, but did not have moneys sufficient to furnish the hotel. The hotel company could not carry out its contract. Caldwell & Company refused to furnish the proceeds of any more bonds. The shortages which the hotel company were unable to pay amounted to $115,000 for furniture to Arthur A. Marer & Company, and the sum of $55,000 to the other parties furnishing equipment, including appellant.

The contract in question could not have been made solely for the benefit of the hotel company, because appellees' testator agreed to pay nothing to the hotel company. Caldwell & Company were mere brokers and underwriters of the bonds and for all that appears in the record they were willing to stop where they were and hold what money (proceeds of bonds) they then had. There is no intimation that appellees' testator expected to procure any furnishings or linens from Caldwell & Company. It is not shown that they had any connections in that line. Caldwell & Company had sold bonds, secured by chattel mortgages, which purported to convey linens and equipment, and Caldwell

& Company were asking appellees' testator, president of the mortgagor, to deliver the goods without obligation to them. It can hardly be said that appellees' testator and Wolford signed the agreement never expecting to be obligated to any person. Few men versed in business affairs, as the record indicates, sign agreements with that purpose in view. If there is any purpose or motive on the part of appellees' testator in signing this contract, it will, of course, be derived from the actual reading of the contract. The contract recites: "Whereas John Harrison is President of the Danville Hotel Company, M. J. Wolford is Treasurer and interested in said Danville Hotel Company. . . ." At this point we strain the construction of the language used to hold that they meant to say that both the president and treasurer were interested in the hotel company. And the parties of the first part, appellees' testator and Wolford, as to Arthur A. Marer & Company of Chicago and their item for furniture amounting to $115,000, which included a written contract for that amount, agreed: "We do hereby guarantee the installation in the Wolford Hotel of Danville on or before December 15, 1926," the said bill of goods, "agreeing, if the Hotel Company does not promptly pay, to pay for said Hotel Company all of the payments therein required to be made before installation is completed when said payments are due." The Marer contract had been made a part of appellees' testator's contract. As to the other items, including appellant's goods which had not then been purchased, the contract reads: "The parties of the first part (appellees' testator and Wolford, interested in the hotel) will promptly pay for the above characters of furnishings and equipment when payments are due, if the Hotel Company does not do so, so that installation of same promptly and free of lien is assured."

When this contract was signed, Caldwell & Company agreed to furnish further proceeds of bonds sold for

the completing of the hotel. Now to whom did appellees' testator and Wolford agree to. make these payments? It is not an instrument of guaranty or indemnity, but reads very much like an original undertaking. Of the strange things suggested in this case we do not find it suggested that these payments should be made to the hotel company or to Caldwell & Company or even to appellees' testator and Wolford themselves. It is not claimed to be a void instrument and that it is void has not even been suggested. Appellees' testator and Wolford knew when they signed the contract that the goods had already been mortgaged and that whoever sold and shipped the goods, if they were delivered, would lose their vendor's lien, and in the case of appellant any chance of recovering the purchase price from the vendee, the Hotel Company. Appellees' testator and Wolford did not want goods placed in a hotel in which they were interested in that way. They did not intend that a set of brick walls, in a beautiful growing city in Illinois should be used as a lure to false credit. In the contract they made it as plain as it could be written that if it became necessary, as they knew it would be, they and each of them had placed an original order for the goods, and that they would pay for them to the only person or company entitled to any pay—the party who furnished the goods. The language of the contract was plain that it was intended to be a personal obligation to the parties who furnished the goods and upon it, the vendor, whoever he or it might be, could sue the makers of the agreement. By the exact language used, appellees' testator and Wolford expressed a ''contractual intent'' for a good and valid consideration, upon a matter in which they were interested, for the benefit of appellant, and we do not see how language could make it plainer.

Accordingly, the judgment of the circuit court of Vermilion county is reversed and the cause remanded.

*Reversed and remanded.*

Upon petition presented for a rehearing by appellees, and it having been duly considered, the opinion is modified, adhered to, and petition for rehearing denied. Upon stipulation, entered by all parties, the amount of the claim not being in dispute, this court finds that the amount of the claim of appellant against appellees is the sum of $3,956.64, which includes interest of 5 per cent per annum to this 7th day of April 1931. Accordingly in pursuance of said stipulation, judgment is entered in this court, that plaintiff, appellant, have and recover from the appellees, defendants and executors, the sum of $3,956.64 with all costs of suit, the same to be paid in the due course of administration and executors duly except as per stipulation and cause not to be remanded.