JAMES BOLTON

*v.*

EDWARD C. HULING *et al.*

*Opinion filed February 21, 1902—Rehearing denied April 3, 1902.*

1. CONTRACTS—*effect of single acceptance of two distinct propositions.* Where two distinct propositions, one to buy and the other to sell specified real estate, are written on one side of a single sheet of paper and separately signed by the proposer, the writing by the person to whom the propositions are made, on the back of such sheet, of the words, "I hereby accept the within if title proves satisfactory," is an acceptance of both propositions, all the words thereof applying to each proposition, and the transaction will constitute two separate and independent contracts.

2. SAME—*offer to sell real estate with acceptance conditioned on title.* A proposition to purchase certain lots at a price named, containing a stipulation for merchantable title abstract, etc., which is accepted by writing the words, "I hereby accept the within if title proves satisfactory," makes a conditional contract only, and if such title as the vendor can give is refused by the proposed purchaser, the vendor may withdraw from the trade and terminate the contract.

3. SAME—*when demand of deed will be construed in light of previous negotiations.* A demand of deed in terms unconditional, made by the proposed purchaser of lots contracted to be sold on the condition that title should "prove satisfactory," will not be construed as an unconditional offer to accept such title as the vendor could then give, where throughout long previous negotiations, oral and by letter, the purchaser had uniformly rejected the title of the vendor, and demanded that it be perfected or that the vendor pay damages for breach of the contract.

*Bolton* v. *Huling,* 91 Ill. App. 350, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This is an action in assumpsit, brought by Edward C. Huling and Walter E. Huling, co-partners as E. C. Huling & Co., against James Bolton, to recover damages for the breach of a contract for the sale of certain lots on Indiana avenue, in the city of Chicago. The case has been

tried twice in the trial court and twice in the Appellate
Court. Upon the first trial in the circuit court judgment
was rendered in favor of appellees for $2375. Upon ap-
peal from that judgment the case was reversed and re-
manded. (51 Ill. App. 591.) The trial court has again
found for the appellees and rendered judgment in their
favor for $2125, and this judgment has been affirmed by
the Appellate Court. (91 Ill. App. 350.)

The record discloses the following facts: On the 22d
day of January, 1890, appellees made a written proposi-
tion to appellant in relation to the purchase from him of
two lots on Indiana avenue, Chicago, and the sale to him
of one lot on State street, Chicago, as follows:

"We will give $37.50 per foot, cash, for lots 21 and 22, in
block 4, (above herein described,) etc., being the third and
fourth lots north of Sixty-third street, west front, on Indiana
avenue. Title to be merchantable, and a merchantable abstract
to be furnished, brought down to date.
*January 22, 1890.*                              E. C. HULING & Co.

"We will furnish you lot (29) on State street, west front, in
John N. Wheeler's subdivision, etc., (above described,) located
on State street between Fifty-fourth and Fifty-fifth, at $1950,
25x160 feet or more, to alley.                   E. C. HULING & Co."

On the back of the above written proposals the ap-
pellant wrote a single acceptance, as follows: "I accept
the within if the title proves satisfactory."

The sale to appellant of the State street lot was con-
summated in March following, and he received a deed
therefor from one Flannigan. Appellant presented an ab-
stract of the title to the Indiana avenue property, which
appellees submitted to their attorneys, Matz & Fisher,
who gave a written opinion concerning the title, in which
they held that one Monroe N. Lord had title to the undi-
vided half of lot 21 and the south four feet of lot 22, and
appellant the undivided half of the same property, and
that appellant also owned the north twenty-one feet of
lot 22, subject to the equities of the persons in posses-

195—25

sion; subject also to a tax deed of date December 21, 1882; also to a tax deed dated May 6, 1885, and also to a sheriff's deed of date July 8, 1885, and other defects, and to make a good title required a warranty deed from said Lord to his interest in the lots, a quit-claim deed from the South Park Commissioners and a quit-claim deed from one Stanley. The Indiana avenue lots were each twenty-five feet front.

When appellant was advised of the defects in his title he sought the persons who held the interests necessary to be obtained to make it good, and found that they demanded more than he felt willing to pay to perfect the title, and on June 14, 1890, appellant, by his counsel, wrote appellees as follows:

"DEAR SIRS—We find it impossible to overcome all the objections of Messrs. Matz & Fisher, att'ys, to the title to lots 21 and 22, in block 4, of Davidson's sub., as P. E. Stanley apparently intends to do nothing in the matter and thus tie the property up indefinitely. With this view we see no other way than to let the sale drop, unless the title can be accepted as it is."

To this letter appellees replied as follows:

"GENTLEMEN—Your favor of June 14th at hand. You will find it not so very easy to let this matter drop before you get through. Regarding lots 21 and 22 the contract is on record,—accepted by Mr. Bolton in his own handwriting. Part of that contract was the delivery of the other lot, which we have done. We have taken good advice, and shall proceed at once to compel him to perfect his title or pay damages."

Nothing further was done until the 25th day of October, when appellees sent one of their attorneys, Matz, to appellant with the following letter:

"*Mr. James Bolton:*

"DEAR SIR—In reference to the contract entered into between you and us on the 22d day of January, 1890, for the sale by you to us, [here follows description of property,] we would respectfully inform you that we are still ready (as we have been ever since the examination by our attorneys of the abstract to said property furnished by you) to carry out our part of the said contract. We have now waited a reasonable time in said

matter, and at your request have given you every opportunity to carry out your part of the contract. We now demand a deed of said premises, and are ready to pay you the purchase price therefor mentioned in said agreement, and must further ask you to at once definitely inform us whether or not you will perform your agreement and deliver said premises."

When Matz took this letter to Bolton, Bolton replied, "I can't carry out that contract." Matz said, "Well, what are you going to do about the matter? I want a definite answer from you as to just what position you are going to take,—as to whether you will carry out the contract or not." Bolton replied, "Well, I won't."

The case was tried before the court without a jury by consent of the parties, and appellant offered nine propositions to be held by the court, the first of which was given, and was as follows:

1. "The so-called contract in evidence in this case is an offer by plaintiffs to buy of defendant two lots on Indiana avenue, the 'title to be merchantable, and a merchantable abstract to be furnished, brought down to date,' which said offer was accepted on the back thereof by defendant in the following words: 'I accept the within if title proves satisfactory.' The said contract or offer is conditional,—not positive and legally binding unless the conditions are met."

The second, fifth, sixth, seventh and ninth refused propositions were as follows:

2. "The contract offered in evidence in this case does not show an absolute, unconditional acceptance by the defendant of an offer or agreement to purchase the premises involved in this cause, from the plaintiffs, and can not be legally enforced unless satisfactory to defendant and plaintiffs.

5. "The title to the two lots in question not being merchantable or acceptable to plaintiffs, defendant had the right, as a matter of law, to drop the trade or withdraw from it, inasmuch as plaintiffs refused to accept the title offered.

6. "Defendant, under the circumstances of this case, had the legal right to give the notice introduced in evidence, and to withdraw from said sale under said notice and to terminate said contract.

7. "Plaintiffs did not agree to accept the title which defendant had at the date of the contract in October, 1890, hence defendant was not obliged to give, or offer to give, a deed of said two lots.

9. "The letter of October, 1890, and the evidence connected therewith, do not, in law, amount to an offer to accept such title as defendant had prior to this suit."

At the request of appellees the court held two propositions of law, as follows:

1. "The court holds as a proposition of law that in construing the written contract of January 22, 1890, it is proper for the court to consider the acts of the parties to the contract subsequent to its execution, as bearing upon the practical construction, if any, placed upon said contract by the parties.

2. "The court holds as a proposition of law that if the court believes, from the evidence, that the letter of October 25, 1890, was delivered on said date to defendant, and nothing was said by the plaintiffs, their agent or attorney, at the time of or subsequent to or in connection with the delivery of said letter, modifying or changing the terms of said letter, and if the court further believes, from the evidence, that the defendant, at the time of the delivery of the said letter, said he would not carry out the contract of January 22, 1890, and deliver a deed, and at that time or subsequent to said time did or said nothing modifying or changing said statement, then the finding of the court should be in favor of plaintiffs."

After the cause had been heard and the court announced his conclusion, appellant, by his counsel, offered to tender a deed to the premises on the payment of the stipulated price. He had, in fact, no deed present, but

proposed to make one if the court would allow time. This the court declined to do.

The errors insisted upon are the affirmance by the Appellate Court of the action of the circuit court in its refusal to give the special holdings asked by appellant and refused, and also in the holding of the Appellate Court that the trial court was not required to pass upon the tender made at the close of the trial, as well as other errors which it is unnecessary to set out.

N. M. JONES, for appellant:

The nominal plaintiffs were not the chief parties in interest, and it was error to give judgment in their names. Pomeroy's Rem. (2d ed.) 127; *Lusk* v. *Thatcher*, 102 Ill. 60; *Herrington* v. *Hubbard*, 1 Scam. 569.

Appellees having refused to accept appellant's title, he was relieved from the necessity of delivering, or offering to deliver, a deed of the premises. *Cummings* v. *Tilton*, 44 Ill. 172; *Follansbee* v. *Adams*, 86 id. 13; *Kadish* v. *Young*, 108 id. 170.

The proposition in question was accepted provided the title to the premises proved satisfactory to the parties interested. On both sides there was uncertainty—a contingency. There was no positive binding agreement. The title did not prove satisfactory or merchantable and the proposition fell to the ground. *Corcoran* v. *White*, 117 Ill. 118; *Lancaster* v. *Schafer*, 31 N. W. Rep. 690; *Bolton* v. *Huling*, 51 Ill. App. 591.

WALTER L. FISHER, and WILLIAM C. BOYDEN, for appellees:

Contracts must be construed according to the real intent and understanding of the parties, to be ascertained primarily by the words which they have used, with the aid, if necessary, of such other considerations as will show the sense in which the party using them must have supposed them to have been received. *Montgomery* v. *Insurance Co.* 55 Ky. 427

If a contract contains words susceptible of two constructions they are to be construed most strongly against the promisor, as he is supposed to have chosen the expressions of doubtful meaning. *Massie* v. *Belford*, 68 Ill. 290.

If the language of a written agreement is on its face susceptible of two constructions, the court will look at the surrounding circumstances, at the situation of the parties and the subject matter of the contract for aid in giving a construction to its language. *Canal Co.* v. *Hill*, 82 U. S. 94; *Railway Co.* v. *Jurey*, 111 id. 584; *Robinson* v. *Stow*, 39 Ill. 568; *Stettauer* v. *Hamlin*, 97 id. 312; *Adams & Westlake Co.* v. *Cook*, 16 Ill. App. 161; *Lynch* v. *Schroth*, 50 id. 668; *Rice* v. *Weber*, 48 id. 573.

In the construction of written instruments the intention of the parties must govern, and to ascertain that intention regard must be had to the nature of the instrument, the condition of the parties executing it and the objects they had in view. *Strong* v. *Gregory*, 19 Ala. 146.

Where the meaning of the language of a contract is uncertain, the construction is to be against the party in whose words it is expressed. *Barney* v. *Newcomb*, 63 Mass. 46; *Massie* v. *Belford*, 68 Ill. 290.

A promise must be interpreted in the sense in which the promisor knew or had reason to know that the promisee understood it. *Clinton* v. *Ramsey*, 20 Ill. App. 577; *Chicago Wharfing Co.* v. *Street*, 54 id. 569.

The courts will adopt even a strained construction of the language of a contract to prevent obvious injustice. *Robinson* v. *Stow*, 39 Ill. 568.

Where a contract is capable of two interpretations, it must be given that construction which inclines most nearly to justice and common sense. *Coghlan* v. *Stetson*, 19 Fed. Rep. 727.

The law will presume that a person meant what his language, by its terms and under the circumstances in which it was used, would be fairly understood to mean. *Clark* v. *Lillie*, 39 Vt. 405.

It was the common law, and it is the well-settled law of our State, that the parties having the legal—not equitable—interest in a contract are proper parties plaintiff in a suit at law. 1 Chitty's Pl. 2; *Miller* v. *Kingsbury*, 28 Ill. App. 532; *Chadsey* v. *Lewis*, 1 Gilm. 159; *McHenry* v. *Ridgely*, 2 Scam. 309; *Saladin* v. *Mitchell*, 45 Ill. 79; *Corbett* v. *Schumacker*, 83 id. 403; *Lohman* v. *Bank*, 87 id. 616; *Ransom* v. *Jones*, 1 Scam. 291; *Harms* v. *McCormick*, 30 Ill. App. 127; *Frye* v. *Bank*, 5 Gilm. 337.

A breach occurred when Bolton positively refused to carry out his contract. No tender was necessary. *Cummings* v. *Tilton*, 44 Ill. 173; *Clark* v. *Weis*, 87 id. 438.

Express acceptance of a proposition need not be proved when both parties acted upon it. *United States* v. *Carlisle*, Fed. Cas. 14,724.

Mr. JUSTICE RICKS delivered the opinion of the court:

The primary and controlling question, as we view it, is as to the legal effect of the contracts offered in evidence and made between the parties hereto. While the contracts were both upon the same piece of paper, it is apparent from the contracts themselves, as well as the evidence in the record, that they were entirely distinct. Huling & Co. were real estate brokers. The State street property that they proposed to sell to Bolton belonged to one Flannigan, and the Indiana avenue property that they were proposing to purchase was for some customer of theirs whose name they did not disclose. The offers as made by appellees were each of them independent and each was signed separately by appellees. When these propositions were presented to appellant he made a single acceptance to both propositions by writing across the back of the paper upon which they were written, "I accept the within if title proves satisfactory.—James Bolton." Appellant contends that this written acceptance completed all the contract made between the parties; that it is plain, unambiguous, and requires no construction other

than such as the ordinary import of the words used would give it. Appellees claim that it must have a construction different to what the ordinary idea to be derived from its context would give, and ask that, inasmuch as the proposition to buy the Indiana avenue property had attached to it the condition that the title should be merchantable and a merchantable abstract should be furnished and brought down to date, and the proposition for the property that they were to sell to appellant on State street did not have that condition attached, this acceptance must be regarded as applying only to the State street property. In other words, the appellees contend that the court should divide this acceptance written by appellant on the back of these contracts, in such a manner as to make a part of it apply to one of them and the whole of it apply to the other. They do not set forth just how the division shall be made, but from the argument we are led to infer that their position is that the acceptance should be read, as to the Indiana avenue property proposed to be purchased of Bolton, as, "I accept.— James Bolton," and as to the State street property proposed to be sold to Bolton the entire acceptance or all the words shall be given effect.

If this acceptance can, in the light of the law, be applied to each of these contracts without doing violence to some well known principle of law and without working an unreasonable result as applied to the two propositions, then the court is not warranted in rejecting any part of it. Mutuality is one of the elements ordinarily looked for in a contract. The proposition as to the Indiana avenue property, as made by appellees, was, so far as it affected them, upon the condition that the title should be merchantable. If it was not merchantable they were not bound to take it. If their theory of the acceptance of that contract is to be adopted, Bolton was bound to make them a title or respond in damages, but they were not bound to take any title short of a merchantable title.

Applying the acceptance in full to the proposal as to the State street property, as appellees insist it should be, it was clearly, as appellees admit, a conditional contract or a conditional acceptance, which could not be enforced until the title was satisfactory to both parties. The title to the State street property did prove satisfactory to Bolton, and he accepted it and paid for it as soon as it was put in the proper form. The title to the Indiana avenue property did not prove satisfactory to appellees, and they did not accept it or offer to accept it in the condition in which it was.

If these two contracts had been written on separate pieces of paper and the identical words used in this acceptance had been written on the back of each of them and signed by Bolton, it does not seem there could have been any controversy as to the meaning of the acceptance. There is no reason known to the law why one who is accepting the proposal of a purchase of his land may not attach to that acceptance a condition that shall relieve him from liability in the event that his title shall not prove satisfactory to the proposed purchaser. It may be said that such an acceptance does not make a contract, and in the strict word we understand that it does not, but is a mere proposal and counter-proposal, which, if acted upon and the contract is consummated and the purposes of the parties are carried out, serves all the purposes; but that need be no argument for holding, in the case at bar, that the acceptance, as applied to the Indiana avenue property, shall be so construed as to make a binding contract, when it is admitted that the same acceptance as related to the State street property did not make a binding contract. These proposals, and the acceptance of them, were in relation to real estate, and whatever contract was entered into, to be binding upon the parties and authorize an action for the non-performance thereof, must be in writing. The fact that the contract with reference to the State street property,

which we regard as an entirely independent contract from the one about which this litigation is, was carried out by the parties, can add nothing to the legal effect of the contract in the suit at bar. In other words, the performance of the contract in reference to the State street property was in no sense a performance or part perform·ance of the contract in reference to the Indiana avenue property. The rights of the parties in the case at bar must be fixed by the proposal relative to the Indiana avenue property and the acceptance by appellant of it.

It is insisted that in the acceptance appellant used the words "if *title* proves satisfactory," and that that precludes the idea that that condition of his acceptance related to both propositions. It seems to us that the logic of such argument would equally lead to the legal conclusion that the writing was only an acceptance of the proposal in reference to the State street property, and that there was no written acceptance of the proposal as to the Indiana avenue property. We are, however, disposed to adopt the view that this acceptance did relate to both propositions and was so intended by the parties. The mere use of the word "title" in the singular, as used in the acceptance, instead of the plural, does not seem to us sufficient reason for rejecting the language of the acceptance and holding that it shall apply only to the State street property. "In the construction of a contract where the language is ambiguous, courts uniformly endeavor to ascertain the intention of the parties and to give effect to that intention; but where the language is unambiguous, although the parties may have failed to express their real intention, there is no room for construction and the legal effect of the agreement must be enforced." (*Walker* v. *Tucker*, 70 Ill. 527; *Benjamin* v. *McConnel*, 4 Gilm. 536; *Smith* v. *Brown*, 5 id. 309; *Crabtree* v. *Hagenbaugh*, 25 Ill. 214.) If we give the words of this acceptance their usual and ordinary effect, then it is apparent that there is no such contract be-

tween these parties as an action could be maintained upon it, unless appellees were satisfied with the title of appellant and offered to accept it and he failed 'or refused to convey such title as he had.    *Corcoran* v. *White*, 117 Ill. 118; *Lancaster* v. *Shaffer*, 31 N. W. Rep. 690; *Anglo-American Provision Co.* v. *Prentiss*, 157 Ill. 506; *Baker* v. *Holt*, 56 Wis. 100; *Northwestern Iron Co.* v. *Meade*, 21 id. 474; *First Nat. Bank* v. *Hall*, 101 U. S. 822; *Middaugh* v. *Stough*, 161 Ill. 312; *Eggleston* v. *Wagner*, 46 Mich. 610.

"In order to convert a proposal into a promise, the constituents of the acceptance tendered must comply with and conform to the conditions and exigencies of the proposal. The acceptance must be of that which is proposed, and nothing else, and must be absolute and unconditional. Whatever the proposal requires to fulfill and effectuate acceptance must be accomplished, and the acceptance must include and carry with it whatever undertaking, right or interest the proposal calls for, and there must be an entire agreement between the proposal and acceptance in regard to the subject matter and extent of interest to be contracted. If the parties do not refer to the same things in the same sense the transaction is simply one of proposals and counter-proposals." *Eggleston* v. *Wagner, supra*.

Appellees now insist that they did offer to take the title appellant had and brought themselves within the condition of his acceptance. We are not able to so interpret the evidence. On April 19, 1890, appellees wrote appellant: "We are ready, and have been for a long time, to close the trade on Indiana avenue if you have the title fixed. * * * If you have the objections fixed that his attorney has made please let us know, so that we can close the sale." On April 30 they again wrote appellant: "On April 19 we wrote you to see if you were ready to close the trade on Indiana avenue. * * * Let us know if you will be ready by Friday or Saturday, and if you will have all the quit-claims necessary to give good title."

On June 2 appellees again wrote appellant: "Regarding the Indiana avenue property that we sold for you last winter, the party who bought it is, and has been, entitled to a deed for the last three or four months. He has waited patiently, and the quit-claims that you were to have gotten ere this to fix the title can be obtained at once as well as by waiting." Then on the 14th of June appellant wrote appellees: "We find it impossible to overcome all of the objections of Messrs. Matz & Fisher to the title to the lots 21 and 22. * * * Stanley apparently intends to do nothing in the matter and thus tie the property up indefinitely. With this view we see no other way out than to let the sale drop, unless the title can be accepted as it is." On the 16th appellees replied: "You will find it not so very easy to let this matter drop before you get through. Regarding lots 21 and 22 the contract is on record,—accepted by Mr. Bolton in his own handwriting. * * * We have taken good advice, and shall proceed at once to compel him to perfect his title or pay the damages." No other communication passed between these parties until the letter of October 25, which, in part, was as follows: "We would respectfully inform you that we are still ready (as we have been ever since the examination by our attorneys of the abstract to said property furnished by you) to carry out our part of the said contract. We have now waited a reasonable time in said matter, and at your request have given you every opportunity to carry out your part of the contract. We now demand a deed to said premises, and are ready to pay you the purchase price therefor mentioned in said agreement, and must further ask you to at once definitely inform us whether or not you will perform your agreement and deliver said premises."

It is insisted that this last letter was an unconditional acceptance of whatever title appellant had. We do not think so. Appellees first told appellant that they were still ready, as they ever have been since the examination

of his abstract, to carry out their part of the contract. It seems to us no rational interpretation of that part of the letter, in the light of the number of letters that had preceded it, could be given other than that the title that they were willing to accept was a merchantable title. They specifically refer to the contract, and in their several letters insist that the quit-claim deeds shall be obtained; that the objections of their attorneys shall be overcome or met; remind him that they have given him a reasonable time to carry out his contract; that they have taken good advice and shall proceed at once to compel him to perfect his title or pay the damages. In fact, the whole tenor of that letter relates back to the proposal and all the correspondence that followed it, and it seems to us to show conclusively upon its face that the then idea of appellees was that the acceptance of appellant could be construed as an unconditional acceptance of their proposal, and that the letter of October 25 would be sufficient to put him in default because of his inability to furnish the merchantable title their proposal called for. On the 14th of June Bolton practically offered to convey to them whatever title he had, and on the 16th of June they refused to accept that, and informed him that they had taken good advice and would proceed at once to compel him to perfect his title or pay the damages, and this letter of October 25 was but the last step in carrying out the declaration of the letter of June 16.

We think this contract was not such an one as entitled appellees to maintain their action, and that the trial court erred in refusing to make the holdings asked by appellant and in making the holdings asked by appellees, and that the Appellate Court erred in affirming the judgment of the trial court.

The judgments of the Appellate and circuit courts are reversed, and the cause is remanded to the circuit court of Cook county for such proceedings as are consistent with the views herein expressed.

*Reversed and remanded.*