**Merchants Loan and Trust Company, Trustee, for use of Caroline Schaaf et al., Appellees, v. Charles E. Ummach, Appellant.**

### Gen. No. 27,401.

1. CONTRACTS—*when "or" will be construed as "and."* The word "or" in a contract requiring defendant to perform "all the obligations of said Edwards or said corporation" under a contract between Edwards, the corporation and plaintiff, will be construed as "and" where the contract is clear and free from ambiguity and provides for sale of the entire capital stock of the corporation by Edwards to defendant in consideration of the purchase price, and

the assumption by the latter of all its obligations, and by a later clause expressly sets forth that it is the intent and purpose that defendant shall step into the shoes of Edwards as owner of such capital stock subject to all the burdens to which the stock is subject which defendant assumes and agrees to perform, especially where defendant has so construed the contract in a collateral agreement.

2. CONTRACTS—*right of strangers to contract to invoke parol evidence rule against party to the contract.* A clear, unambiguous contract between defendant and the sole stockholder of a corporation by which defendant assumed all the obligations of such stockholder and the corporation under a contract between stockholder, the corporation and plaintiff, cannot be varied by parol evidence that when defendant assumed such obligations it was understood by all the parties that he was not to be held personally liable therefor, in an action to hold defendant personally liable for the corporation's obligations to plaintiff under the three-party agreement.

3. CONTRACTS—*when partial failure of consideration is no defense.* In an action to hold defendant personally liable on notes of a corporation, all the obligations of which he assumed in consideration of the sale to him of its entire capital stock under contract with the former sole stockholder who had been personally liable on such notes, along with the corporation, under an agreement with plaintiff, defendant may not show the value of the assets of the corporation at the time of his contract to purchase the stock even though it tends to show partial failure of consideration, where he has retained all the benefits of the contract without rescinding it and it is impossible to place the parties *in statu quo.*

4. CONTRACTS—*breach of independent covenant by third person to defendant as defense against breach by defendant.* In an action to hold defendant personally liable on notes of a corporation, the entire capital stock of which he purchased subject to the corporation's obligation to plaintiff which he assumed and agreed to pay under the contract of purchase which also obligated the former sole stockholder, from whom defendant purchased the stock, to pay all bills payable of the corporation on the date of the purchase, save those to plaintiff, it is no defense that such former stockholder has failed to pay such bills payable, the covenant of the stockholder to make such payments being entirely independent of that of defendant to pay the corporate obligations to plaintiff.

5. HARMLESS AND PREJUDICIAL ERROR—*inconsistent rulings on evidence.* Error involved in inconsistent rulings on the admissibility of evidence tending to prove the same fact, in admitting that offered by plaintiff and excluding that later offered by defendant, is not reversible where the fact in question was immaterial and the evidence admitted did not harm defendant.

6. CONTRACTS—*enforcement of contract at suit of stranger hav-*

Merchants Loan & Trust Co. v. Ummach, 228 Ill. App. 67.

*ing beneficial interest therein.* A contract by which defendant agreed with the owner of the entire capital stock of a corporation, upon sale of such stock to him, that he would assume all obligations of the corporation to plaintiff under a contract between such former owner, the corporation and plaintiff, under which the notes in question were made by the corporation to the plaintiff as trustee for heirs to whom the corporation was indebted, may be enforced by plaintiff against defendant in an action to hold defendant personally liable on such notes, since plaintiff has a substantial, beneficial interest therein.

7. CORPORATIONS—*when execution of contract and promissory notes are not ultra vires.* A contract by a corporation, which was indebted to certain stockholders, by which such corporation, for the purpose of securing an extension of the time of payment, agreed to issue its promissory notes for the full amount of the indebtedness together with the purchase price of such creditor's stock, which stock together with that owned by the only other stockholder was to be reissued to such stockholder and by him pledged with plaintiff to secure payment of such promissory notes of the corporation, is not an *ultra vires* act, nor is the issuance of the notes by the corporation to plaintiff pursuant to the agreement *ultra vires.*

8. CONTRACTS—*election of remedies for enforcement.* Under a contract by which a corporation executed promissory notes to plaintiff as trustee to be collected by plaintiff when due and the proceeds paid over to the real parties in interest, which notes were secured by a pledge of the entire capital stock of the maker of the notes, the trustee may sue defendant, who assumed payment of all of such corporation's obligations, to charge him personally with payment of the notes, notwithstanding the trust agreement directed that in case of default on the notes the pledged stock might be sold by the trustee, especially where such agreement contemplated that the trustee should have all power needed to carry out the purpose of the trust.

9. CONTRACTS—*receipt of dividend in bankruptcy as waiver of other remedy for enforcement of debt.* A trustee to which has been executed promissory notes by a corporation, the obligations of which defendant assumed, is not estopped from instituting suit against defendant to hold him personally liable on the notes under his contract, by the receipt of a dividend on the indebtedness represented by the notes in a bankruptcy proceeding of such corporation, nor was the right of action against defendant affected by the fact that suit was not instituted immediately after the bankruptcy proceedings, defendant having been president of such corporation and cognizant of its affairs at all times.

O'CONNOR, J., dissenting.

Appeal by defendant from the Municipal Court of Chicago;

the Hon. HOWARD HAYES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Affirmed. Opinion filed February 16, 1923. Rehearing denied March 1, 1923. *Certiorari* denied by Supreme Court (making opinion final).

ARCHIBALD CATTELL and CARL A. WALDRON, for appellant.

WILLIAM A. DOYLE and BROWN, FOX & BLUMBERG, for appellees; CHARLES LEROY BROWN and JACOB LOGAN FOX, of counsel.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

At the time of his death, one John Schaaf was the owner of 244 shares of the capital stock of the Edwards Manufacturing Company. The balance of the capital stock in that company, being 256 shares, was owned by William S. Edwards. At the time of Schaaf's death, the company owed him $49,642.36, that indebtedness being evidenced by certain promissory notes of the company, which he held. It was apparently the desire of the company to extend the payment of the indebtedness represented by these notes for a considerable time, and it appears that the heirs of John Schaaf were willing that should be done provided they were satisfactorily secured in the matter of the ultimate payment of the indebtedness. To effect such an arrangement a contract was entered into on March 11, 1908, by and between the Schaaf heirs and the executor of the estate of John Schaaf, deceased, as parties of the first part, the Edwards Manufacturing Company as party of the second part and Edwards personally as party of the third part. This contract recited that, for the convenience of the company, it was desirable that the indebtedness represented by the notes in the possession of the Schaaf estate be extended and that, for the better security of that indebtedness, it was desired that Edwards ac-

quire the 244 shares of stock held by the Schaafs, thus giving him all the capital stock of the company, and that he pledge the entire stock for the purpose of furnishing such security, and to accomplish those things the parties proceeded to covenant and agree as follows:

The Schaafs agreed to sell and transfer to Edwards the 244 shares of the stock of the company which they held, and they further agreed to surrender and acknowledge full payment of the notes of the company which were in the possession of John Schaaf at the time of his death. Edwards agreed that upon the surrender of the Schaaf stock to him and the surrender of the aforesaid notes to the company for cancellation he would turn over the certificates of stock representing the Schaaf holding to the company for cancellation and reissue to himself, which reissued certificates, together with the certificates for the balance of the stock which he then held, should then be indorsed in blank by him and deposited with the Merchants Loan and Trust Company (Edwards reserving the right to vote the stock) for the purposes set forth in the contract. It was then provided in the contract that the Edwards Manufacturing Company would pay the Schaafs $2,000 upon the execution of the contract and would execute and deliver to the trustee, the Merchants Loan and Trust Company, its promissory notes aggregating the sum of $72,042.40. A description of the various notes, making up this aggregate was then set forth in the contract. It was then provided that the trustee was to hold the certificates representing the capital stock of the Edwards Manufacturing Company and the promissory notes just referred to, the notes for collection as they matured and the stock for the purpose of securing the notes, and it was again provided that the company should pay the notes as they matured. In consideration of Edwards pledging his stock to secure the company's notes, it was provided in the contract that the company should be re-

garded as paying the sum of $24,400, being the par
value of the stock which Edwards was acquiring from
the Schaafs, for Edwards, this payment being repre-
sented by the last $24,400 which was to be paid by the
company in taking up the last of the series of notes
which the company was executing; and further it was
provided that when the notes had all been paid and
the stock had been released to Edwards the company
was to be entitled to charge the $24,400 against Ed-
wards and receive that sum from him. Provision was
made, in the event of default by the company in pay-
ment of its notes for thirty days, and the failure of
Edwards to pay or take up such defaulted notes within
ten days thereafter, and after notice of such default,
the trustee might, at the written request of the
Schaafs, sell so much of the stock as might be neces-
sary to release a sum sufficient to pay the notes in de-
fault. This contract provided that all the rights,
benefits, advantages, liabilities and obligations of the
Schaafs should extend to their successor or successors
and be binding upon their respective heirs, executors
and administrators, and that the rights, benefits, ad-
vantages, liabilities and obligations of the Edwards
Manufacturing Company should extend to and be bind-
ing upon its successors and assigns, and that those of
Edwards should extend to and be binding upon his
heirs, executors, administrators and assigns. There
were some other provisions in this contract but it is
not necessary, for the purpose of this opinion, to set
them forth here.

Following the execution of this contract, the Schaaf
stock was surrendered and reissued to Edwards and
the notes against the company which had been held by
John Schaaf at the time of his death were also can-
celed and surrendered and the company issued new
notes for the amount specified in the contract, which
was the amount of the Schaaf indebtedness plus the
par value of the Schaaf stock, and these new notes,

together with the certificates representing the entire capital stock of the company, were deposited with the bank for the purposes of the trust as set forth in the contract above referred to.

On September 17, 1910, Edwards entered into another contract, with the defendant Ummach, which for convenience we shall refer to as the Edwards-Ummach contract. This contract recited that Ummach had paid Edwards $5,000 in cash and was to make further payments aggregating $25,000 as evidenced by his notes which were delivered at the time of the execution of the contract, and it recited further that Edwards had exhibited to Ummach the prior contract, which we shall refer to as the Schaaf contract, and that Edwards had bargained and sold to Ummach all his right, title and interest in the capital stock of the Edwards Manufacturing Company, "subject to said Schaaf contract, and said Ummach shall and will perform from this time forward all obligations of said Edwards or said corporation under said Schaaf contract to any and all of the other parties thereto whomsoever." This contract then provided that all such steps were to be taken as might be necessary to vest Ummach with the same control and dominion over the Edwards Manufacturing Company as Edwards had possessed up to that time, and it was further provided and agreed between the parties that the company was to transfer to Edwards all the bills and accounts receivable appearing on its books as of the close of business on the date of the contract, and Edwards agreed to pay and discharge and save harmless both the company and Ummach from any further obligation or liability for any and all bills or accounts payable by the company as shown by its books as of the close of business on that date, "except that said Ummach shall pay the notes referred to in the said Schaaf contract, and shall likewise on his part indemnify and save harmless the said Edwards from any further liability

on account of said notes for the said Schaaf contract, or through or by or under it or them." After making certain other provisions, which it is unnecessary to note here, the Edwards-Ummach contract provided as follows: "The intent and purpose of this agreement is that said Ummach shall step into the shoes of said Edwards as the owner of the entire capital stock of said company, subject to and assuming all burdens to which the same is subject under said Schaaf contract, and performing the same, as of the close of business today, for the purchase price of Thirty Thousand Dollars ($30,000) in cash and notes."

Some months later Ummach transferred his interest in the Edwards Manufacturing Company to one Kaiser, and the latter proceeded to operate the business for about a year, when he transferred the interest he had acquired from Ummach back to him, and still later one Williamson acquired an interest in Ummach's interest in the business.

In December, 1914, the Edwards Manufacturing Company became bankrupt and its affairs were wound up and its assets distributed. In the bankruptcy proceedings the Merchants Loan and Trust Company, as trustee under the Schaaf contract, filed its claim on the notes remaining in its hands unpaid, and in that connection an affidavit was made setting forth the substance of the provisions of the Schaaf contract, and among other things stating that no security had been received for the debt of the Edwards Manufacturing Company as represented by its notes, except the capital stock of the company. A dividend amounting to $8,170.60 was paid by the bankrupt estate of the trustee on this claim. Certain of these notes of the company in the hands of the trustee had been paid by the company during the time Edwards was its president and operating it and certain others had been paid by the company during the time Ummach was its president and was operating it. The trustee

brought this suit against the defendant Ummach to recover the balance remaining unpaid on this series of notes, all of them having long since become due, claiming that the defendant is liable for the unpaid balance on the notes by reason of his undertaking and agreement entered into with Edwards in the so-called Edwards-Ummach contract. By his affidavit of merits defendant alleged that he had not promised to pay the notes; that he had never received any consideration for such an alleged promise; that there was both a partial and an entire failure of the consideration which was alleged to have passed to him; and that the Schaaf contract was *ultra vires* the Edwards Manufacturing Company. The issues thus joined were submitted to the trial court without the intervention of a jury, and after hearing all the evidence, the court found the issues for the plaintiff and entered judgment accordingly in the sum of $28,917.99, being the amount unpaid on the notes, with interest. To reverse that judgment the defendant Ummach has perfected this appeal.

As we read the Edwards-Ummach contract, it is entirely clear and does not leave room for reasonable doubt as to the meaning and intentions of the parties. Having specifically provided in prior clauses in the contract that Ummach "shall pay the notes referred to in the said Schaaf contract," and that Ummach "shall and will perform from this time forward all obligations of said Edwards or said corporation under said Schaaf contract to any and all of the other parties thereto whomsoever," the parties made a further attempt to define their obligations by providing that the intent and purpose of their agreement is that Ummach shall step into the shoes of Edwards, "as the owner of the entire capital stock of said company, subject to *and assuming* all burdens to which *the same* (the stock) is subject under said Schaaf contract, *and performing the same.*"

It would seem that if Edwards and Ummach, upon the latter buying all the interest of Edwards in the company, wanted to enter into a memorandum of agreement setting forth the transaction and specifying that in purchasing the equity Edwards had in the capital stock of the company, Ummach was assuming and agreeing to pay the indebtedness with which the stock was burdened and incumbered, they could hardly have chosen more appropriate language than we find in this contract. There was, therefore, no occasion to resort to extrinsic evidence as to the understanding of the parties nor as to the construction they had placed on the contract. *Diederich v. Rose*, 228 Ill. 610; *Parker-Washington Co. v. City of Chicago*, 267 Ill. 137. Where the language of a contract is not ambiguous, although the parties may have failed to express their real intention, there is no room for construction and the legal effect of the agreement must be carried out. *Bolton v. Huling*, 195 Ill. 384. In our opinion the word "or" is to be construed as meaning "and" in that clause of the Edwards-Ummach contract which sets forth that Ummach shall and will perform "all the obligations of said Edwards or said corporation under the Schaaf contract to any and all of the other parties thereto." That this is the true construction of the clause above referred to is indicated by the fact that in the contract Ummach later entered into with Kaiser when he transferred to him the interest he (Ummach) had acquired from Edwards, the contract he entered into with Kaiser provided that "Kaiser shall and will perform  *  *  *  all obligations of said Edwards *and* of said corporation" to the Schaafs "which said Ummach did, in and by said contract between himself and Edwards  *  *  *  agree to perform." If it could be considered that there was any ambiguity in this clause of the contract, it is entirely cleared up in the later clause in which the parties expressly set forth what their intent and purpose is, in

making the contract, wherein it is said that Ummach is to step into the shoes of Edwards "as the owner of the entire capital stock of said company" subject to all the burdens to which the stock is subject which Ummach therein assumes and agrees to perform.

On the trial the defendant offered evidence tending to prove that at the time the contract was being executed between himself and Edwards, September 17, 1910, the parties, in the presence of Edwards' lawyer, went over the various terms of the contract and discussed the meaning of them, all of which conversation tended to show that it was the understanding between the parties to the contract that Ummach was not to be personally liable for the Schaaf notes. On objection of the plaintiff this evidence was excluded on the ground that the terms of the written contract could not be thus varied by parol evidence. And the defendant contends that this was error because the rule applied by the court does not obtain where the suit is brought by a third person who is not a party to the contract, but is limited to actions between the parties to the contract only. A great many authorities are cited where it is stated that the rule prohibiting the admission of parol evidence to vary the terms of a written contract does not apply where the suit is brought by one not a party to the contract, but is applicable only in suits between the parties to the instrument. But upon a careful examination of all the authorities, we think this statement is not accurate. Where a third person, not a party to the contract, bases his case upon it, and seeks to enforce it, the parol evidence rule applies. 4 Wigmore on Evidence, sec. 2446; 1 Elliott on Evidence, sec. 572; 21 Amer. & Eng. Encyc. (2nd Ed.) pp. 1103-4; *Sayre v. Burdick,* 47 Minn. 367; *Minneapolis, St. P. & S. S. M. Ry. Co. v. Home Ins. Co.,* 55 Minn. 236; *Current v. Muir,* 99 Minn. 1; *Schneider v. Kirkpatrick,* 80 Mo. App. 145; *Selchow v. Stymus,* 26 Hun (N. Y.) 145; *Wodock v.*

*Robinson,* 148 Pa. St. 503; *Johnston v. Charles Abresch Co.,* 123 Wis. 130.

In discussing this question Professor Wigmore, in the section cited, says: "It is commonly said that the parol evidence rule, in the present aspect, is binding upon only those persons who are parties to the document. This form of statement suffices in most instances to reach correct results; but it is not sound on principle. The theory of the rule is that the parties have determined that a particular document shall be made the sole embodiment of their legal act for certain legal purposes (*ante,* sec. 2425). Hence, so far as that effect and those purposes are concerned, they must be found in that writing and nowhere else, no matter who may desire to avail himself of it. But so far as other effects and purposes are concerned, the writing has not superseded their other conduct, nor other persons' conduct, and it may still be resorted to for any other purpose for which it is material, either by other persons or by themselves. * * * The truth seems to be, then, that the rule will still apply to exclude extrinsic utterances, even as against other parties, provided it is sought to use those utterances for the very purpose for which the writing has superseded them as the legal act."

In 1 Elliott on Evidence, sec. 572, it is said: "It has often been laid down in unlimited terms that the parol evidence rule is applicable only in suits between the parties to the instrument. It is unquestionably true that the rule does not operate to exclude parol evidence, otherwise admissible, in a controversy between strangers, who are not representatives or privies of a party and have no connection with the instrument, where they are not seeking to enforce it as effective for their own benefit, or the like. The authorities to this effect are numerous. But where one, although not a party to the instrument, bases his case upon it, and seeks to render it effective in his favor as against

the other party to the action by enforcing a right originating in the relation established by it, or which is founded upon it, the parol evidence rule applies." To the same effect are the other authorities cited.

Under the law the offered evidence was clearly inadmissible and the court properly excluded it.

Further, in the course of the trial, the defendant offered evidence tending to show the value of the assets of the company at the time he entered into his contract with Edwards and also tending to show that Edwards had failed to perform his covenant to pay all the debts of the company represented by the bills payable shown on its books as of the date of the contract. Objection to this offer was sustained by the trial court and, in our opinion, properly so. The evidence tending to show the value of the assets of the company as of the date of the Edwards-Ummach contract did not tend to show a total failure of consideration. At most, it tended to show a partial failure. Assuming such a partial failure of consideration to exist, that might have given Ummach the right to tender back his interest in the stock, have the contract rescinded and have his money returned but in a contract involving mutual and independent covenants, one may not retain all the benefits of the contract, and then when it has become impossible to place the parties *in statu quo,* and suit has been brought on his covenants, defend on the ground of a partial failure of consideration.

The promise of Edwards to pay the debts of the company, represented by its bills payable as of the date of the contract, was a covenant entirely independent of the one by which Ummach undertook and promised to pay the Schaaf notes and therefore the failure of Edwards to perform his covenant may not be set up in bar of the covenant Ummach entered into with respect to the payment of the notes. *Gage v. Lewis,* 68 Ill. 604.

The court did admit certain evidence offered by the plaintiff in the form of testimony by the witness Kaiser, touching the value of the company's assets at the time the Edwards-Ummach contract was entered into, and it is true that this ruling was not consistent with later rulings of the court on offers made by Ummach on that question. But we do not consider this as involving any error that calls for a reversal of the judgment. The testimony admitted was quite as immaterial as that which was later offered and kept out and in our opinion that which was admitted did the defendant no harm.

We are of the opinion that the plaintiff, Merchants Loan and Trust Company, the third party in the case at bar, is entitled to recover against the defendant Ummach, the promisor, that recovery being based on the contract the latter made with Edwards, the promisee, wherein the defendant assumed the payment of the Schaaf notes and promised to pay them. Where one makes a contract with another, for the benefit of a third person, the latter, though not a party to the contract, may maintain an action upon it against the promisor. The contract need not have been accepted or assented to by the third party. It does not involve an indemnity, but the promise is deemed to invest the person for whose benefit it is made with an immediate interest and right as though the promise had been made to him. To enable the third party to maintain an action on the contract, it is not necessary that any consideration shall have moved from the third party to the promisor. The consideration moving from the promisee is sufficient on which to base the liability of the promisor to the third party. In such an action the question of the liability of the promisee to the third party is immaterial, as the liability of the promisor does not depend upon the liability of the promisee to the third party. The promisee need not have been indebted to the third party, nor is it necessary that the

obligation undertaken by the promisor shall relieve the promisee of any legal liability. It is not necessary, to enable the third party to sue the promisor, that the obligation shall have been undertaken by the latter directly or primarily for the benefit of the third person. The liability of the promisor to the third party in an action brought by the latter against the former depends merely upon the question of whether the third party has a beneficial interest in the enforcement of the contract. *Dean v. Walker,* 107 Ill. 540; *Webster v. Fleming,* 178 Ill. 140; *Olson v. Ostby,* 178 Ill. App 165; *Torpe v. Jahn,* 177 Ill. App. 85; *Easter v. Newbury,* 170 Ill. App. 494; *Lawrence v. Oglesby,* 178 Ill. 122; *Dallum v. Birdsall,* 66 Ill. 378; *McConnell v. General Roofing Mfg. Co.,* 187 Ill. App. 99; *Harts v. Emery,* 184 Ill. 564.

So, in the case at bar, the question of the liability of Edwards on the Schaaf notes is immaterial, as is also the fact that no consideration moved from the Schaafs or the plaintiff to Ummach. That the plaintiff representing the Schaafs has a substantial beneficial interest in the Edwards-Ummach contract is clear. The plaintiff may therefore maintain an action on the contract against the promisor Ummach. In order to establish the right of plaintiff to maintain this action, it would not be sufficient to establish merely the fact that it might benefit by the performance of the contract as between Edwards and Ummach. *Kenfield Pub. Co. v. Baumgartner,* 189 Ill. App. 413. In that case the promisor might have fulfilled his contract with the promisee without benefiting or effecting the third party at all. There a magazine known as "The Motor Way" was owned and published by a corporation known as the "Technical Press." The latter (together with one of its stockholders) entered into a contract with Baumgartner, who therein agreed, among other things, to continue the publication of "The Motor Way" for five years at his own expense.

Theretofore the plaintiff, Kenfield Publishing Company, had done the printing on this magazine for the Technical Press. After the contract in question was entered into between the Technical Press and Baumgartner, the plaintiff continued to do the printing of the magazine. This suit was brought to recover for that printing service for the months of April to October, 1907, inclusive. The defendant ceased to do anything in the way of publishing the magazine in question, on September 6, 1907. The court held the defendant liable for all work done by the plaintiff up to that date on evidence showing he had directed the plaintiff to do the work and agreed to be responsible for it. As to the claim of the plaintiff for compensation from the defendant for work done after September 6, when the defendant abandoned his contract with the Technical Press, the court held that the defendant was not liable, pointing out that there was nothing in the contract between the Technical Press and Baumgartner indicating an understanding or agreement that the plaintiff was to continue doing the printing and that under the contract the defendant was at liberty to employ any other concern for that purpose if he saw fit.

But, in the case at bar, the defendant Ummach could not perform his contract with Edwards without materially and substantially benefiting the plaintiff, thus giving the latter a substantial beneficial interest in the contract such as gave it the right to sue the defendant on the contract. In the case last referred to, the court put its decision on the further ground that the doctrine that a third party may maintain an action on a promise made by one person to another for his benefit "is limited to contracts which have for their primary object and purpose the benefit of a third person and which were made for his direct benefit," citing *Searles v. City of Flora*, 225 Ill. 167, where that language is used, quoting in turn from *Parker v. Jeffry*, 26 Ore.

186. In our opinion that is not in conformity with the rule as it has been laid down by our Supreme Court in other cases to which we have referred. It is certainly not the case, that the contract involved had for its primary object and purpose the benefit of a third person, when there is an assumption of a mortgage debt, and a promise to pay it, by the grantee in a deed or a promise by the purchaser of a going concern that he will pay its debts then due, or a promise by the purchaser of personalty that he will discharge all liens which are charges against the property or a promise by a vendor of real estate to pay commissions to a broker as specified in the contract of sale, and yet in all such situations it has been held that the third party could sue the promisor on the contract made by the latter with his promisee. In the *Searles* case, it was merely held that where the contract sued on was entered into solely for the benefit of the parties thereto and not in any sense either directly or indirectly for the benefit of the third party, the latter could not sue on it. In that case also the facts involved were such that the promisor could and in fact did fulfill his contract with the promisee without affecting the third party at all. In such case, of course, the latter could not maintain an action on the contract against the promisor. In the *Searles* case the court was not required to hold, and we do not consider that it did hold, that the contract must have been entered into primarily for the benefit of the third party in order to enable the latter to sue on it. The court did quote language to that effect from the Oregon Supreme Court. There are jurisdictions holding that third parties have only a qualified right to sue on contracts between others, among which we find Oregon, and there are other jurisdictions, in which the third party is not permitted to sue on such a contract under any circumstances, and still others in which he is permitted to sue irrespective of whether he is privy to the consid-

eration or the contract was entered into primarily for his benefit. 13 Corpus Juris 711. As already pointed out, the third party may not maintain his action against the promisor if he merely has an incidental interest in the contract. But he may, if he has a substantial, legal or equitable interest in the performance of the contract, even though the contract was not entered into for his benefit primarily. Such was the situation in *Snell v. Ives,* 85 Ill. 279; *Beasley v. Webster,* 64 Ill. 458; *Bristow v. Lane,* 21 Ill. 194; *Eddy v. Roberts,* 17 Ill. 505; *Williamson-Stewart Paper Co. v. Seaman,* 29 Ill. App. 68. Certainly he should be permitted to maintain such an action where, as in the case at bar, the performance of the contract by the promisor, as entered into by the latter with the promisee, will necessarily benefit the third party.

In our opinion the execution of the Schaaf contract by the Edwards Manufacturing Company and of the notes involved in that contract were not *ultra vires* acts. These transactions bear no analogy to those involved in *Hodson v. Eugene Glass Co.,* 156 Ill. 397; *Dobson v. More,* 164 Ill. 110; *Calumet & C. Canal & Dock Co. v. Conkling,* 273 Ill. 318; *Piser v. Serota,* 182 Ill. App. 390, and other cases to which the defendant has called our attention. A legitimate corporate purpose was to be attained if the payment of the indebtedness of the company represented by the Schaaf notes could be postponed, and to accomplish that, the company, in effect, undertook to purchase the Schaaf stock so that it might be used as collateral on the new notes of the company and, after the notes were paid and the collateral surrendered, the stock was to be turned over to Edwards or his assigns upon their paying for it at its par value. That was the sum and substance of the transaction and it was in no sense *ultra vires* the corporation.

It was entirely within the powers of the plaintiff, Merchants Loan and Trust Company, to institute these

proceedings. While the trust agreement directed that the trustee, in the event of default on the notes, might sell the stock deposited with the trustee, as security, there was nothing in the terms of the Schaaf contract excluding the employment of other means to accomplish payment of the notes. Under the terms of that contract the notes were to be paid to the trustee and the latter was clearly given implied if not express authority to collect them, and this carried with it, necessarily, authority to employ a suit at law or any other legitimate method that might prove necessary or desirable to that end. The trustee must be considered as having, under the Schaaf contract, all the powers needed to carry out the purposes of the trust. *Bergman v. Arnhold,* 242 Ill. 218. The receipt of a dividend on the indebtedness of the Edwards Manufacturing Company, in the bankruptcy proceedings in December, 1914, did not estop the trustee from instituting this suit against the defendant on the Edwards-Ummach contract, nor is the suit at bar affected by the fact that it was not instituted earlier, or immediately after the company became bankrupt. Ummach was the president of the company at that time and was, of course, familiar with the company's affairs and the status of these Schaaf notes.

We find no error in the record and, therefore, the judgment of the municipal court is affirmed.

*Judgment affirmed.*

TAYLOR, J., concurs.

MR. JUSTICE O'CONNOR dissenting: In my opinion, the judgment of the municipal court of Chicago should be reversed because no recovery can be had on the evidence, which is undisputed, as a matter of law. The written contract on which plaintiff's claim is predicated was entered into by William S. Edwards and Charles E. Ummach, the defendant, on September 17, 1910, and although plaintiff was not a party to that contract, yet it was made, in part at least, for his bene-

fit, and under the law in this State, as announced in many decisions of the Supreme Court, a person may bring an action on a contract in his own name, although not a party to it even though the primary object of the contract was not to benefit the plaintiff, and it is not necessary in such case that any consideration move from the plaintiff to the defendant. Nor does the law require that before plaintiff can recover in the instant case it must appear that Edwards, at the time he made the contract in question, was personally indebted to the plaintiff. That element is proper to be considered in construing the contract itself, but there is no reason in law why Edwards, in selling his interest in the company to Ummach, might not require the latter, as a part of the consideration, to personally pay the notes in question.

It is earnestly contended by the defendant that the court erred in excluding evidence offered by him tending to show that at and before the time the contract in question was executed it was specifically stated by Edwards that the defendant, under the contract as written, would not be required to pay the notes in suit. A great many authorities are cited which lay down the rule in unlimited terms that the parol evidence rule has no application in a suit brought by a person who is not a party to the contract, but it is clear that this statement is inaccurate, because where a third party bottoms his case on the contract, the parol evidence rule applies, and the authorities cited in the majority opinion clearly sustain this proposition. The court's ruling in this respect was not erroneous.

I am in accord with the majority opinion in all the propositions of law there announced, and the only matter on which I disagree is the construction of the contract itself. In my opinion, a careful consideration of the contract, construed in the light of attendant circumstances, leads to the conclusion that the defend-

ant is not personally liable on the notes in question. It must be borne in mind that the contract specifically states that "Edwards has this day exhibited to said Ummach that certain agreement entered into on the 11th day of March, 1908, by and between Caroline Schaaf, et al., individually and as executors of the Last Will and Testament of John Schaaf, deceased, as parties of the first part, and W. S. Edwards Mfg. Co., a corporation of the State of Illinois, as second party, and the undersigned William S. Edwards as a third party thereto, under and by which said contract the said Edwards acquired certain interests in and to certain of the shares of the capital stock of said W. S. Edwards Mfg. Co." So that in construing the contract in question, we must keep in mind the Schaaf contract. When the Schaaf contract was made in 1908 the Schaafs owned 244 shares of the stock and Edwards the balance, 256 shares, and the Schaafs held the company's note for $49,642.36. The company was in a bad way financially and to tide the matter over, and in an endeavor to serve the best interests of all the parties, an agreement was entered into whereby the Schaafs turned in their shares of stock and their notes, and a new certificate for all of the stock was then issued to Edwards. The Schaafs received $2,000 in cash and notes for the par value of their shares of stock, $24,400 and the balance of the $49,000, or a total of $27,042.40. The cash payment and the notes were given by the company and not by Edwards. These notes matured at different times and for different amounts, the last maturing January 1, 1916. The new stock certificate was issued to Edwards for the entire capital stock of the company. It was indorsed in blank by him, and the notes together with the stock certificate were placed in escrow with the Merchants Loan and Trust Company Bank. The notes did not bear interest until after maturity. Edwards then had complete control of the company and pro-

ceeded to conduct its business until he sold out his interest and entered into the contract with Ummach September 17, 1910. During that time the company paid the notes as they came due. The contract further provided that until the notes were all paid Edwards' salary should not exceed five per cent per annum of the gross sales of the company; that when the notes were all paid by the company a charge might be made by the company against Edwards for the $24,400; that the expense of the trusteeship should be paid by the Schaafs, except that in case of default in the payment of any of the notes and expense was thereby incurred, this should be borne by the company. It is perfectly clear that Edwards was not personally liable on the notes and, indeed, this was admitted on the trial by plaintiffs. Nor did he personally pay any part of the consideration. It was all borne by the company, and the only time he would be liable would be after the notes were all paid and then, under the agreement, the company would have a claim against Edwards for the 244 shares of stock, or $24,400.

The evidence shows that Ummach was interested in a business which was a competitor of the Edwards company. He entered into the contract in question with Edwards September 17, 1910. By the terms of this agreement Ummach was to pay Edwards for the latter's interest in the Edwards company $30,000. $5,000 was paid in cash and Ummach gave his three notes for the remaining $25,000. The first of these notes for $5,000 was due on or before March 1, 1911. Another note for the same amount was due on or before October 1, 1911, and the third note for $15,000 matured on or before three years after date. All of the notes bore interest at the rate of 6 per cent per annum. That contract, after referring to the Schaaf contract, provided that "Edwards has this day bargained and sold unto said Ummach all and singular his right, title and interest in all and very share of the capital stock

of said W. S. Edwards Mfg. Co., subject to said 'Schaaf contract,' and said Ummach shall and will perform from this time forward all obligations of said Edwards or said corporation under said 'Schaaf contract.'" That contract was drawn by Edwards' attorney, and it further provided that the records of the company should be made to show that Ummach was succeeding to all the rights of Edwards in the company, and as its president and treasurer.

At that time the company owed some bills other than the Schaaf notes, and there was also a number of parties that were indebted to the company, and the contract provided that all the bills receivable by the company were to be turned over and become the property of Edwards, and he was to pay all of the debts of the company other than the Schaaf notes as of the close of business on the day the contract was made. In this respect, the contract states: "It is further agreed between the parties that said corporation shall assign and transfer to said Edwards all and singular the bills and accounts receivable of the said corporation as the same appear on the books thereof at the close of business on this day, and said Edwards shall and will pay and discharge and hereafter indemnify and save harmless both said corporation and said Ummach from any further obligation or liability whatsoever for any bills or accounts owing and payable by said company as shown by its books at the close of business on this day, or as heretofore otherwise disclosed to said Ummach, including the liability for rent due under the lease upon the premises occupied by said corporation at No. 21 East Lake street, Chicago, Illinois, or as shall not be shown by its books whatsoever, except that said Ummach shall pay the notes referred to in the said 'Schaaf contract' and shall likewise on his own part indemnify and save harmless the said Edwards from any further liability on account of said notes of the said 'Schaaf contract,' or through

or by or under it or them." Then follow paragraphs 4 and 5 of the contract which have to do with matters not pertaining to the question before us. Paragraph 6, which is the last, provides "The intent and purpose of this agreement is that said Ummach shall step into the shoes of said Edwards as the owner of the entire capital stock of said company, subject to and assuming all burdens to which the same is subject under said 'Schaaf contract,' and performing the same, as of the close of business today, for the purchase price of Thirty Thousand Dollars ($30,000) in cash and notes, as hereinbefore set out, and the said Edwards taking all accounts and bills due the company and paying all book liabilities of the company."

Edwards was not personally liable on the notes. This was conceded on the trial, as indeed it must be under the evidence. No reason is apparent from the record, nor is there any suggestion made in the briefs filed by plaintiffs, why Ummach should personally assume to pay the notes other than the terms of the written contract itself. Normally Edwards, who was not personally liable on the notes, would not want Ummach personally to assume them because in that event Ummach would pay Edwards less for his interest in the company. Nor do I think that when the contract is carefully considered that it can be held that Ummach assumed any personal liability on the notes. But it is said that the contract expressly states "said Ummach shall pay the notes referred to in the 'Schaaf contract,' " and that these words are plain and unambiguous. If these words were taken from the context, the argument would be sound, but we are not at liberty to do so. They should be considered in connection with the entire contract. What the parties were attempting to say and, in my opinion, what they did say, was that Edwards was to sell all of his interest in the company to Ummach for $30,000; that all of the bills receivable by the company on that date were

to be turned over to Edwards as his property; that in consideration Edwards was to pay all of the bills and accounts due by the company except the Ummach notes, because the contract, after providing that the bills payable should be turned over to Edwards, provides that Edwards must pay all bills and accounts owing by the company, including rent, except the Schaaf notes. Edwards wanted to make it clear that he was not agreeing to pay the Schaaf notes. This further appears from that part of paragraph 6 quoted. That paragraph purports to be a summary of what has gone before. It says the intent and purposes of the agreement is that Ummach shall step into the shoes of Edwards "as owner of the entire capital stock of the company" but subject to the liability of the Schaaf contract. If it was the intent and purpose, as stated in this paragraph, that Ummach was to step into the shoes of Edwards, then Ummach was not liable for the notes because Edwards was not so liable. But to hold Ummach liable here, the contract must be construed to mean that Ummach not only stepped into Edwards' shoes, but that he assumed something in addition, viz., the Schaaf notes. In this connection it must be remembered that the corporation, after the Schaaf contract was made, was practically a one-man company, viz., Edwards, and when he sold out and entered into the contract in question with Ummach, it was still a one-man company, viz., Ummach. Upon a careful consideration of the record I am clearly of the opinion that plaintiff's claim in this case, based upon the Ummach contract, is an afterthought, because one of the Schaafs testified that in the Spring of 1914, which was several months before the company became bankrupt, Ummach came to him and stated that he was tired borrowing money to pay the notes, but that if the Schaafs would take $10,000 for the amount remaining due on the notes in full, he would borrow that amount and pay, and that the Schaafs re-

plied to Ummach referring him to their lawyer. This evidence was introduced by the plaintiff tending to show that Ummach at that time considered himself personally liable. Ummach denied this by stating that he referred to the company and not to himself personally. The company went into bankruptcy in December, 1914, and the Schaafs, by their counsel, prepared and filed their claim in the bankruptcy court, wherein it was stated under oath that they had no security for their claim and it was accordingly allowed as the claim of a general creditor. It is perfectly plain that under the bankruptcy law the claim could not have been there allowed as a general unsecured creditor had it appeared that Ummach was liable on the notes. From this it clearly appears that plaintiff, who was represented by able counsel, did not consider that Ummach was liable to pay the notes until long after the filing and allowance of the claim in the bankruptcy proceedings. While plaintiff, of course, would not be estopped by these facts, yet it is evidence that should be considered in construing the contract in question. Edwards appears to have died before the suit was brought.

In my opinion, a careful consideration of the record warrants the conclusion that Ummach is not liable in this case and that the judgment should be reversed.